WATERLOO MIN. CO. v. DOE et al.

(Circuit Court, S. D. California. April 18, 1893.)

No. 120.

1. MINES AND MINING—BOUNDARY OF CLAIM—PATENT CONCLUSIVE.
   The assignee of a mining claim procured a patent therefor, **the survey** being made under the supervision of the original locator. *Held* that, in the absence of evidence of bad faith on the part of the locator, **the patent** was conclusive as to the limits of the claim as against the patentee.

2. SAME—USE OF GROUND FOR BUILDINGS AND TUNNEL.
   The use of an unclaimed piece of ground by a mining company for buildings and for the construction of a tunnel thereunder to aid in the working of the company's claim, does not initiate any right to the ground as an independent mining claim.

3. SAME—LOCATION OF CLAIM—FAILURE TO DISCOVER LODE—RIGHT TO PATENT.
   The fact that three tons of silver-bearing rock, yielding $600, have been extracted from a mining claim, does not entitle the locator to enter the claim for a patent when no vein or lode has been discovered within the limits of the claim, the location having been made merely in the hope of finding such at some future time.

Proceeding by the Waterloo Mining Company against John S. Doe, James L. Patterson, and Diedrich Bahten to determine the right to a mining claim. Decree declaring that neither party is entitled to the disputed ground.

A. H. Ricketts, for complainant.

C. J. Perkins and R. S. Mesick, for defendants Doe and Patterson.

ROSS, District Judge. All of the mining claims mentioned herein lie on the southerly side of Calico mountain, in San Bernardino county, of this state, and within the Calico mining district. Of these claims the Silver King is highest upon the mountain side. Immediately south of and adjoining that is the Oriental No. 2; immediately south of and adjoining the Oriental No. 2 is the Oregon No. 3, (the ground in dispute;) next lower down the mountain is the Oregon, the Oregon and Oriental No. 2, however, having a common corner, and the Oregon No. 3 being a triangular-shaped piece of ground lying between them; and immediately south of and adjoining the Oregon is the Silver Monument. The Silver King and Oregon are owned by the complainant, and the Oriental No. 2 and Silver Monument are owned by the respondent Doe. Both parties claim the Oregon No. 3. The ground embraced by that claim was located as a mining lode claim, and called "Oregon No. 3," by D. Bahten, on or about the 22d day of August, 1885. At the time of such location, however, no vein or lode had been discovered within the boundaries of the claim, but, according to Bahten's own testimony, his location was made "in the hope of finding some ore in it at some time." In 1886, Bahten leased the Oregon No. 3 claim, for mining purposes, to a man named Stevens, who mined therefrom about three tons of silver-bearing rock, which yielded him $600. In 1887, Bahten sold the claim to the respondent Doe for $2,000. Doe subsequently relocated the ground in his own name, and in making such relocation included within the lines of the claim some ground which had been left out of the official survey of the Oriental No. 2. Upon this relocation Doe applied in the United States land office at Los Angeles for a patent for the ground thus claimed. Against its issuance the complainant protested in the land office, and within the statutory time commenced the present suit to determine the conflicting claims of the respective parties to the ground embraced within the Oregon No. 3 claim.

The Oregon claim, which is now patented, and the property, as has been said, of the complainant, was originally located by James Waldrip in July, 1881. The immediate predecessor in interest of the complainant was a corporation called the Oro Grande Company; and that company, of which Bahten was vice president and general manager, was the owner and in possession of the Silver King and Oregon claims at the time Bahten located the Oregon No. 3.

The grounds upon which complainant relies for a judgment in its favor are, in substance: First, that the ground in controversy was in fact a part of the Oregon claim as located by Waldrip in 1881, and was omitted from the official survey and patent of that claim through the fraudulent acts of Bahten; second, that both the Oro Grande Company and complainant have made such use of the ground in controversy as raise a privilege in their behalf inconsistent with the acquisition of any right by the respondent to become the purchaser of it from the government; third, that the location of the ground made by Bahten and sold to Doe was made under such circumstances of bad faith and wrong towards the Oro Grande Company (of which Doe had knowledge) that his

location inured to the benefit of that company, and through it to the complainant; fourth, that the ground in controversy was not subject to location, nor properly located, so as to entitle respondent to become a purchaser thereof from the government.

As a matter of fact the official survey of the Oregon claim, upon which the complainant's predecessor in interest, the Oro Grande Company, applied for and received the government patent, did not include the ground afterwards located and now claimed as the Oregon No. 3. The record shows that at the time of the making of the official survey of the Oregon claim, and at the time of the making of the application for a patent for it, based upon that survey, Bahten was vice president and general manager of the company making the application; but there is nothing in the record showing or tending to show that the ground here in question and known as the "Oregon No. 3 Claim" was omitted from the official survey and patent of the Oregon claim by reason of any fraud practiced by Bahten or any one else. The case shows that Frederick E. Lewis was the United States deputy mineral surveyor for California, who made the official survey of the Oregon claim, and that he directed Bahten to send for Waldrip, the original locator of the claim, to point out its monuments and boundaries, for the reason that the location notice was indefinite, and he wished to know from the locator himself where the monuments were originally placed. In accordance with that direction, Bahten sent for Waldrip, who came and pointed out to the surveyor what he claimed to be the original monuments and boundaries. The evidence shows that in doing so Waldrip was not prompted by Bahten or any one else, and that, whether correctly designated or not, the corners and lines pointed out by him were not the result of any improper influence exerted by Lewis, Bahten, or any other person. The boundaries thus pointed out by the original locator of the Oregon claim were the boundaries adopted by the government surveyor, and returned by him to the land office, and upon which the government patent was issued to and received by complainant's predecessor in interest, the Oro Grande Company.

The patent so issued is a conclusive determination of the true location of the Oregon claim; but, apart from this, the evidence in the case, I think, shows that the boundaries of that claim adopted by the government surveyor and embodied in the patent are in accordance with its boundaries as originally established by Waldrip. As has been said, they were pointed out to the surveyor by Waldrip himself. If he testified truly, and was not mistaken in respect to the boundaries pointed out by him, there is no room for doubt upon this point. His testimony seems to have been given in a very straightforward manner, and bears every impress of truth. In his notice of location placed in the discovery monument, and recorded in the records of the mining district, in claiming 750 feet easterly and 750 feet westerly of the point of discovery, with 300 feet on each side of the vein, he added:

"Or so much of 300 feet as will not conflict with the boundary line of the Oriental Mine No. 2, and the northern boundaries line of Silver Monument's

northern line. Said mine is situated south of and running parallel with the Silver King and Oriental No. 2, and north of the Silver Monument mine."

It is urged on the part of the complainant that this language in the notice of location of the Oregon claim shows that the intention of the locator was to take up all of the vacant ground between the Oriental No. 2 and Silver Monument claims, and in the cross-examination of Waldrip it was strenuously endeavored by counsel to make him admit that such was his intention in using in the notice the language quoted. The explanation of the witness was that he knew that the Oriental No. 2 and Silver Monument claims had been previously located, although he did not know their precise lines. He did not therefore know whether there were 600 feet of ground between the two, and that, as he had no intention of infringing upon either of those claims, for the purpose of manifesting that intention he inserted in his notice of location of the Oregon claim the language already quoted. He knew the southeast corner of the Oriental No. 2 claim, and he adopted the monument that marked that corner as the northeast corner of the Oregon claim. Concerning that fact there is no dispute; and as there is no question but that the northern boundary of the Oregon claim as originally located was a straight line from this common corner of the Oriental No. 2 and Oregon claims to the northwest corner of the latter claim, wherever it was established, it is manifest that if the northwest corner of the Oregon was correctly pointed out by Waldrip to and adopted by Lewis in the survey upon which the patent was issued, the ground here in controversy was not included in the original location of the Oregon claim.

In respect to the northwest corner of the Oregon, Waldrip is very specific in his statements. He says that he did not and could not establish the northwest corner of the claim in line with its southwest corner and west end center monuments because of a deep gulch that existed in the side of the mountain, and which compelled him to diverge to the east. That he built the northwest corner monument of stone about 3 feet high, and on the edge of the gulch, which was about 20 feet deep, and so close to it that in building the monument he came very near sliding down the hill. This fact, as well as the physical character of the place, would naturally impress itself upon the memory of the witness. He further testifies that when he went there to point out the boundaries of the claim to the surveyor that northwest corner monument was still standing where he placed it, although some of the rocks, probably one foot of them, had fallen off. I am satisfied this witness told the truth, and that between the Oriental No. 2 and the Oregon claim, as originally located as well as patented, there was a vacant triangular piece of ground, afterwards located by Bahten as the Oregon No. 3.

The case shows that the Silver King claim is worked by means of a tunnel that commences and extends for 14 feet in the ground here in dispute, located and known as the "Oregon No. 3," and through the Oriental No. 2 claim, into the Silver King ground. That tunnel was constructed into and across the Oriental No. 2

ground by the owners of the Silver King claim under license and permission given them by the owners of the Oriental No. 2, upon the conditions that the tunnel should be for the joint use of the Silver King Company and the owners of the Oriental No. 2 claim, and that any ore encountered in the Oriental No. 2 ground in running the tunnel should be the property of the owners of the Oriental No. 2 claim. The complainant and its predecessors in ownership of the Silver King claim, as necessary adjuncts in and about the operation of the tunnel so constructed, and for the working of the Silver King claim, erected upon the ground in dispute, and now known as the "Oregon No. 3 Claim," a blacksmith shop, a carpenter shop, a stable, a boiler house, a rail track, a waste dump, and, as has already been said, about 14 feet of the tunnel. None of these structures were erected, and no act was done in connection with them, with any reference to the location, working, or development of the ground in dispute as a mining claim, or for any purpose other than that of subserving the purpose of working and developing the Silver King mine. It is perfectly clear that the possession thus held by the complainant and its predecessors in interest of the ground in dispute, and the buildings erected and acts performed by them for the purposes stated, could not initiate any right to the ground in dispute as an independent mining claim. Whether ground so possessed and used is open to location as a mining claim by one having trust relations with those so possessed of and using the ground, or is subject to relocation by the grantee of such person with notice of the trust relations, need not be determined, for the reason that I think it clear from the evidence that neither at the time of Bahten's location of the Oregon No. 3, nor at the time of its relocation by his grantee, the respondent Doe, had there been discovered, nor has there yet been discovered, so far as the evidence shows, any vein or lode of quartz or other rock in place within the boundaries of the claim.

As has been already observed, Bahten himself admits in his testimony that at the time his location was made there had been no such discovery made, but that the claim was located "in the hope of finding some ore in it at some time;" and the testimony of Mr. John Hays Hammond, a mining engineer of much learning and experience, and who made a critical examination of the ground shortly before giving his testimony, shows clearly that no vein or lode has yet been discovered within the boundaries of the claim; that there are no outcroppings of any vein or lode upon the surface of the ground; and the little exploration that has been made by means of cuts, a small tunnel, and a shallow shaft has failed to disclose any such vein or lode. It is quite true that from one or more of the cuts Stevens extracted the ore already mentioned, and that other mineral-bearing rock exists in them, samples of which were introduced in evidence as exhibits in this case. But the testimony of Hammond, which is not overcome or impaired by that of Tucker, Patterson, Scupham, or any other witness, shows that it did not come from any defined vein or lode, so far as can be ascertained from developments so far made. It is obvious that

without the discovery of a vein or lode the ground in question was not subject to location as a mining lode claim. I am therefore of opinion that neither party to the suit is entitled to enter the ground embraced within the boundaries of the Oregon No. 3 as a mining claim.

A decree in accordance with these views will be entered.