## NEVADA SIERRA OIL CO. v. HOME OIL CO. et al.

(Circuit Court, S. D. California. December 18, 1899.)

1. MINERAL LANDS—ACTION TO RECOVER—GROUND FOR APPOINTMENT OF RECEIVER.

A court will appoint a receiver to take charge of public lands claimed by both parties under the mining laws of the United States, to the end that the required work may be done thereon for the benefit of the party entitled thereto, where the proof shows that the complainant has reasonable ground for his claim of ownership.

2. SAME—OIL PLACER CLAIMS—SUFFICIENCY OF DISCOVERY.

To constitute a prior discovery which will support a location of public ground as an oil placer claim under the mining laws, the locator must have actually discovered oil within the limits of the claim. Mere surface indications of the existence of oil therein, however strong, are not sufficient, nor is the existence of oil upon adjoining lands.

98 F.—43

**8. Same—Discovery after Location.**

In the absence of any intervening rights, the fact that mineral is not discovered on a claim until after the notice of location is posted and the boundary marked is immaterial, and, where the discovery is the result of work subsequently done by the locator, his possessory rights under his location are complete from the date of such discovery.

**4. Same—Adopting Discovery of Another.**

While it is not necessary that a locator should be the first discoverer of mineral upon the land, in order that a prior discovery by another shall inure to his benefit, and give validity to his location, it must have been known to and adopted and claimed by him.

**5. Same—Lands in Possession of Another—Clandestine Location.**

No right can be initiated on government land which is in the actual possession of another by a forcible, fraudulent, or clandestine entry thereon for the purpose of locating it as a mining or other claim.

## On Application for the Appointment of a Receiver.

Anderson & Anderson, J. H. Call, and Wm. J. Hunsaker, for complainant.

L. L. Cory, J. A. Hannah, Bicknell, Gibson & Trask, J. S. Chapman, Page, McCutchen & Eells, and C. C. Wright, for defendants.

ROSS, Circuit Judge. The subject of controversy in this suit is a piece of public land of the United States, containing under its surface petroleum, and to which both the complainant and the defendants claim to be entitled under and by virtue of the mining laws. As the defendants are extracting large quantities of oil from the ground, and prevent the complainant from doing the work thereon required by the laws of the United States in order to make good its alleged claim, an application has been made by it to the court for the appointment of a receiver to take possession of the property, and operate it, and do the required work, pending the litigation, for the benefit of the party that may ultimately be adjudged to be entitled to it; the respective parties agreeing that by reason of the operation of wells on adjoining lands no injunction ought, in any event, to be issued, because such action would necessarily result in the draining of a large part of the oil from the land in controversy by those operating the adjoining territory. Upon the hearing of the application a large amount of testimony was introduced on behalf of the respective parties, consisting in great part of conflicting affidavits. In respect to this conflict of evidence the court would not undertake, at this stage of the case, to make a decisive determination; but if the proof, taken as a whole, shows reasonable ground for the complainant's claim to the land in question, then, clearly, it will be the duty of the court to appoint a receiver to take possession of it pending the litigation, to the end that the annual work required by the laws of the United States may be performed for the benefit of the party who may ultimately prevail in the suit, and in order to conserve the property for the benefit of the party entitled thereto, and prevent the extraction and disposition, pending the litigation, of the oil, which the proof shows constitutes the chief, if not the only, value of the land. But, unless the proof does show that the complainant's case has a reasonable ground to rest upon,

it is the duty of the court to deny the application, for courts of equity do not lightly appoint receivers to take property out of the possession of any party.

The undisputed evidence shows that on the 1st day of January, 1893, the ground in controversy was unappropriated public land of the United States, which had been theretofore surveyed, and by that survey designated as the "northeast quarter of section 20, township 19 south, range 15 east, Mount Diablo base and meridian," containing 160 acres, and that on the day named J. E. Wilson, for himself and seven other persons, all of whom were competent locators, undertook to locate the ground under the mining laws of the United States, posting thereon a notice of location claiming the quarter section as a consolidated mining claim, and, it is contended, marked its boundaries in accordance with the requirements of the law. It is not pretended that Wilson or any of his associates remained in actual possession of the land, or did any work thereon under that location. On the contrary, one of the averments of the bill is that on the 1st day of January, 1896, the land was unappropriated public land of the United States, open to location under the mining laws. The undisputed evidence also shows that in the year 1895 Frank Barrett undertook to locate the same ground, for himself and seven other persons, as a consolidated mining claim, pursuant to the same laws; but neither he nor any of his associates remained in the actual possession of the ground, or did any work under that location. The evidence leaves no room to doubt that on the 1st day of January, 1896, the land was unappropriated public land of the United States, on which day, as has been said, Wilson undertook, in behalf of himself and his seven former associates, to make a second location under the mining laws, posting thereon the required notice of location, and, it is contended on the part of the complainant, marking the boundaries in accordance with the requirements of the statute. Assuming that to be so, the difficulty with his location of January 1, 1896, is that the proof fails to show that he made, prior to the posting of the notice and the marking of the boundaries, or subsequent thereto under that location, any discovery of mineral in or upon the land. The bill alleges that at the time of the posting of the notice of location of January 1, 1896, Wilson discovered seepages of oil on the land in question, as well as oil sand and shale, but there is no showing in the proof that he discovered any seepages of oil on it. On the contrary, I think the evidence shows beyond any doubt that there never were any seepages of oil on that quarter section of land. There is evidence on the part of the complainant going to show that Wilson discovered sandstone and shale thereon, as well as on adjoining lands, and that there were seepages of oil on some of the adjoining lands, as also wells on one of the adjoining tracts, which were producing more or less oil. But these were nothing more than indications of existing oil under the surface of the ground in question, which might or might not prove to be true. Mere indications, however strong, are not, in my opinion, sufficient to answer the requirements of the statute, which requires, as one of the essential conditions to the making of a valid location of unap-

propriated public land of the United States under the mining laws, a discovery of mineral within the limits of the claim. Rev. St. §§ 2320, 2329; Mining Co. v. Doe (C. C.) 56 Fed. 685. Indications of the existence of a thing is not the thing itself. It is entirely true that the statute, requiring as a condition to a valid location the discovery of mineral within the limits of the claim, should, as between conflicting claimants to mineral lands, receive a broad and liberal construction, and so as to protect bona fide locators who have really made a discovery of mineral, whether it be under the statute providing for the location of vein or lode claims or placer claims. As was well said by Judge Hawley in Book v. Mining Co. (C. C.) 58 Fed. 106, 120, in speaking of vein and lode claims:

"When the locator finds rock in place containing mineral, he has made a discovery, within the meaning of the statute, whether the rock or earth is rich or poor, whether it assays high or low. It is the finding of the mineral in the rock in place, as distinguished from float rock, that constitutes the discovery, and warrants the prospector in making a location of a mining claim."

So, in respect to placer claims, if a competent locator actually finds upon unappropriated public land petroleum or other mineral in or upon the ground, and so situated as to constitute a part of it, it is a sufficient discovery, within the meaning of the statute, to justify a location under the law, without waiting to ascertain by exploration whether the ground contains the mineral in sufficient quantities to pay. The question whether a particular piece of the public land is more valuable for mineral than for agricultural purposes is one that does not arise in cases like the present. While, as has been said, the statute requiring a discovery of mineral as one of the essential conditions of a valid location of land under the mining laws should be liberally construed in behalf of bona fide locators, no court would be justified in ignoring the statutory requirement. Mere indications of mineral, I repeat, do not constitute the discovery of the mineral itself. If so, a location made upon the discovery of such indications, followed by the proper marking of the boundaries of the claim and the doing of the statutory amount of work within the prescribed time, whether the work resulted in the actual discovery of mineral or not, would entitle the locator to apply for, and upon due proof and payment receive, the government title to the land as mineral land; which obviously would not only be unauthorized by any provision of the statute, but would be in direct conflict with the sections already cited.

What has been said in respect to the absence of any discovery of mineral by Wilson on January 1, 1896, equally applies to his pretended location of January 1, 1893, and to Barrett's pretended location of the same ground in 1895, under whom the defendants claim. Barrett, during the year 1895, undertook to transfer his right to the ground in question, which had no existence in fact or law, to the Producers' & Consumers' Oil Company, which company later undertook to transfer the same thing (which was nothing) to the defendant Miller, and on December 31, 1896, Miller undertook to relinquish to the United States what he did not have, namely, a right to the land in question, and immediately thereafter, to wit, on the 31st day

of December, 1896, without having made any discovery of mineral upon the land, undertook to locate the quarter section in question under the mining laws, for himself and seven other persons, by posting the required notice and marking the boundaries. Shortly thereafter he undertook to confer upon Barrett the right to enter upon and explore for and develop oil upon the claim, and to dispose of the oil there found. Barrett thereupon went into actual possession of the land, and early in 1897 erected a derrick thereon, and commenced boring for oil, and shortly thereafter transferred, with the consent of Miller, whatever rights he acquired from him to the defendant Home Oil Company, which company proceeded with the boring, and in October or November, 1897, at a depth of about 800 feet, actually discovered oil in the ground, since which time it has remained in the actual possession of the claim, and bored several other wells, several of which proved to be flowing wells, and in the aggregate yield a large quantity of oil. It would thus seem that, if the location made by Miller and his associates on the 31st day of December, 1896, was properly marked upon the ground, and the notice of the location properly posted, followed, as it was, by the actual possession of the ground by those claiming under it, and by the actual discovery of mineral within the limits of the claim by them, the requirements of the United States statute in respect to the location of mineral land were answered, no rights of any third party having in the meantime intervened. As said by the circuit court of appeals for the Eighth circuit, in the case of Erwin v. Perego, 35 C. C. A. 484, 93 Fed. 609, 611:

"The acts of congress prescribed two, and only two, prerequisites to the vesting in a competent locator of the complete possessory title to a lode mining claim. (And the same rule is by the statute made applicable to placer mining claims.) They are the discovery upon unappropriated public land of the United States, within the limits of his claim, of a mineral-bearing lode, and the distinct marking of the boundaries of his claim, so that they can be readily traced. No appropriation of the land is made until both these requirements are fulfilled, and until that time the lode and land sought are open to location and appropriation by any competent locator; but, when these requirements have been complied with, the land is no longer public, but the possession, the right to the possession, and the right to acquire the title are irrevocably vested in the locator."

The court, in the case cited, proceeded to hold that, in the absence of any intervening rights, it is immaterial that the discovery is not made until after the posting of the notice and the marking of the boundaries of the claim, saying that the order in which the statutory requirements are complied with is immaterial so long as the rights of others do not intervene before they are complied with; that "the marking of the boundaries of the claim may precede the discovery, or the discovery may precede the marking; and, if both are completed before the rights of others intervene, the earlier act will inure to the benefit of the locator as of the date of the later, and a complete possessory title to the premises will vest in him as of the later date,"—citing Jupiter Min. Co. v. Bodie Consol. Min. Co. (C. C.) 11 Fed. 666; North Noonday Min. Co. v. Orient Min. Co. (C. C.) 1 Fed. 522; Zollars v. Evans (C. C.) 5 Fed. 172; Strepy v.

Stark (Colo. Sup.) 5 Pac. 111; Thompson v. Spray, 72 Cal. 528, 14 Pac. 182; Erhardt v. Boaro, 113 U. S. 527, 5 Sup. Ct. 560, 28 L. Ed. 1113. All of this, however, is based upon the supposition, as is expressly shown in the opinion of the court, that the location has also been made in conformity with any valid state legislation that may exist in the particular state in which the mineral land is situated, and with any valid local rules and regulations of the mining district in which the land may be situated, if any such exist. Section 2324 of the Revised Statutes makes the manner of locating mining claims and recording them subject to the laws of the state or territory, and the regulations of each mining district, when they are not in conflict with the laws of the United States. Kendall v. Mining Co., 144 U. S. 658, 12 Sup. Ct. 779, 36 L. Ed. 583. At the time of the actual discovery of oil upon the tract of land here in controversy by the defendant Home Oil Company in the fall of 1897, at which time, if at all, the location under which the defendants claim became complete, there was in existence an act of the legislature of the state of California entitled "An act prescribing the manner of locating mining claims upon the public domain of the United States, recording notices of location thereof, amending defective locations, and providing for the deposit of district records with county recorders, and prescribing the effect to be given to recordation of notices of location and affidavits," approved March 27, 1897 (St. 1897, p. 214), the first, second, third, and sixth sections of which are as follows:

"Section 1. The location of mining claims upon the public domain of the United States shall be made and perfected as provided in this act.

"Sec. 2. The discoverer of any vein or lode shall immediately, upon making a discovery, erect at the point of discovery a substantial monument or mound of rocks, and post thereon a preliminary notice, which shall contain: First—the name of the lode or claim; second—the name of the locator or locators; third—the date of the discovery; fourth—the number of linear feet claimed in length along the course of the vein each way from the point of discovery; fifth—the width claimed on each side of the center of the vein; sixth—the general course of the vein or lode, as near as may be; seventh—that such notice is a first or preliminary notice. Such notice shall be recorded in the office of the county recorder of the county in which the same is posted within twenty days after the posting thereof. Upon the erection of said monument and posting such notice, the discoverer shall be allowed the period of time specified in section three of this act to enable him to perfect his location as hereinafter provided.

"Sec. 3. Within sixty days from the date of the discovery of a vein or lode, the discoverer must perform fifty dollars' worth of labor in developing his discovery, and distinctly mark his location on the ground so that its boundaries can be readily traced, and must file in the office of the county recorder of the county in which the claim is situated, a certificate of location, which said certificate shall state: (1) The name of the lode or claim. (2) The name of the locator or locators. (3) The date of discovery and posting of the notice provided for in section two of this act, which shall be considered as the date of the location. (4) A description of the claim, defining the exterior boundaries as they are marked upon the ground, and such additional description by reference to some natural objects, or permanent monument, as will identify the claim. (5) A statement that such certificate is the final or completed notice of location, and that he has performed the aforesaid fifty dollars' worth of labor in development work thereof within the aforesaid sixty-day period, stating generally the nature thereof. Said certificate shall be dated and signed by or on behalf of the locator or locators, and verified by them or by some one in their behalf, and when filed for record shall be deemed

and considered as prima facie evidence of the facts therein recited. A copy of such certificate of location, certified by the county recorder, shall be admitted in evidence in all actions or proceedings with the same effect as the original. The performance of such labor shall be deemed a necessary act in completing such location and a part thereof, and no part thereof shall inure to the benefit of any subsequent location."

"Sec. 6. All locations of quartz or placer formations or deposits, hereafter made, which do not conform to the requirements of this act, in so far as the same are respectively applicable thereto, shall be void."

In the view I take of the present case, it is not necessary to decide to what extent, if at all, this act, while in force, was applicable to placer claims, or whether, in view of this state legislation, the location under which the defendants assert title is or is not invalid. Assuming that the defendants failed to comply with the provisions of this state legislation, and that such failure operated to open the land to the location of any other competent locator, the fact remains that the defendants continued in the actual possession of the land, and continued to mine the same for oil, and that they were so in possession and so engaged on the 26th day of May, 1898, when Frank H. Jackson, for himself and the seven other persons who had theretofore been associated with Wilson, undertook to locate the ground in question under the mining laws. That location, according to the affidavit of Jackson, which was introduced in evidence on behalf of the complainant, was based upon these facts, as constituting his discovery, and nothing else:

"That on May 26, 1898, he (Jackson) was on said northeast quarter of said section. That on said date he discovered indications of oil-bearing strata on said quarter section at and near the southeast corner thereof. Said indications were as follows: At the said southeast corner the surface is covered with broken-up formations of sandstone, and underneath, less than one foot beneath the surface, Jackson found the sandstone in place. A few feet east and northerly from said corner a ravine cuts the formation, showing the solid sandstone stratum in place, being the same stratum that underlies the said corner a short distance above said corner in said ravine, and about on the west line of section 20. There is a highly mineralized spring, charged with soda and other salts, such as are almost invariably found in the proximity of oil-bearing sand, and which indicate the oil sand is in the immediate neighborhood. The sandstone referred to has some strata or shale, and said sandstone and shale are of the character that usually carry oil in said district, and said shale bears indications of bituminous matter. That on said date he located the said northeast quarter section as a placer mining and oil claim as follows,"—giving the boundaries.

The previous observations upon the subject of discovery dispose of this attempted location by Jackson for himself and his seven associates. It was, as he himself testifies, based merely and solely upon surface indications of oil, which are insufficient to constitute a discovery. It is doubtless true, as will appear from what follows, that Jackson, at the time of the making of his attempted location on May 26, 1898, knew of the actual discovery by the defendants of oil upon the land in question; but it is perfectly plain, from his own affidavit, that he did not base his location upon any such knowledge. It is also true, as a matter of law, that it is not necessary that a locator should be the first discoverer of mineral upon the land in order to make a valid location; but he must not only have knowledge of the former discovery, but such actual discovery must be adopted and claimed by him in order to give validity to

his location. Jupiter Min. Co. v. Bodie Consol. Min. Co. (C. C.) 11 Fed. 666, 676. This, as has been shown, Jackson did not do, but, on the contrary, based his location upon mere surface indications of the existence of oil, which, as has been said, is insufficient to constitute a discovery. Moreover, I think it clear that the attempted location by Jackson, made on the 26th day of May, 1898, was invalid for another reason. The defendants were at that time in the actual possession of the claim in controversy, and actually engaged in mining it for oil. It appears from the affidavit of C. A. Canfield, one of the parties interested in the defendant Home Oil Company,—and this I do not find anywhere contradicted:

"That in the month of May, 1898, J. E. Wilson [who, Jackson swears in his affidavit, assisted him in marking the boundaries under the location made by him May 26, 1898] and Frank H. Jackson came to Oil City, and at affiant's invitation stayed at his cabin, and where they were entertained as guests. That the morning after they came to affiant's cabin, as aforesaid, affiant saw them engaged in the erection of a monument. He went to them, and asked them what they were doing, whereupon said Jackson told him that they were perpetuating the monuments defining the line of section 17 in said township and range. That affiant thereupon showed them where the south center corners of said section 17 were, whereupon they moved the rock over to the corner so indicated. That after the said Wilson and Jackson left the said monument, the said affiant went and got I. F. Postom, who was then manager of the Home Oil Company, operating on the northeast quarter of section 20, and he and said Postom tore down said monument, to make an examination thereof, and to see if they had left any notice of claim of any kind whatever therein, and they found nothing therein, and they thereupon restored said monument. That some time in June, 1897, some person, to affiant unknown, entered upon the said northeast quarter of section 20, went to the southwest corner thereof, and partially erected a derrick. That, as soon as said affiant discovered that the derrick was there, he went there, and made an examination of it, and found nobody around or in possession of that portion of said quarter section in connection with said derrick. That affiant says, after his first visit there, later in the same day, the same or other parties placed or added more to the structure of the said derrick, but without completing it. That thereafter no further work was done by anybody in connection with said derrick, nobody remaining in possession of or claiming it, or to the ground in connection therewith, and the next time that the affiant visited that portion of the ground, which was a few weeks later, he found said derrick was down."

There are affidavits on behalf of the complainant to the effect that the derrick thus spoken of was built by Wilson, and that he completed it at a cost of $100, and that it was so built under and pursuant to the location made by Jackson on May 26, 1898. It is true that upon mineral land of the United States upon which there is no valid existing location any competent locator may enter, even if it is in the actual possession of another, provided he can do so peaceably and in good faith, in order to initiate a location for himself; but no right upon any government land, whether mineral or agricultural, which is in the actual possession of another, can be initiated by a forcible, fraudulent, surreptitious, or clandestine entry thereon. Such entry must be open and aboveboard, and made in good faith. Belk v. Meagher, 104 U. S. 279, 26 L. Ed. 735; Atherton v. Fowler, 96 U. S. 513, 24 L. Ed. 732. One who is in the actual possession of a mining claim, working it for the mineral it contains, and claiming it under the laws of the United

States, whether the location under which he so claims is valid or invalid, cannot be forcibly, surreptitiously, clandestinely, or otherwise fraudulently intruded upon or ousted while he is asleep in his cabin, or temporarily absent from his claim. I think it clear from the showing made upon the hearing of this application: First, that Jackson did not make any such open and good-faith entry upon the actual possession of the defendants of the quarter section in question, upon which he could initiate any valid location thereof under the mining laws; and, secondly, that, according to his own affidavit, he made no such discovery of mineral upon the land as the statute requires. For the reasons stated, I am of the opinion that the complainant is not entitled to the appointment of a receiver herein, irrespective of the question of the validity of the location under which the defendants assert title, and irrespective of other questions argued by counsel. An order will be entered denying the application for the appointment of a receiver.