## ERHARDT *v.* BOARO & Others.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF COLORADO.

Argued January 14. 1885.—Decided March 2, 1885.

A written notice of a claim to fifteen hundred feet on a mineral-bearing lode or vein in Colorado, signed by the discoverer thereof, and posted on a stake at the point of discovery, when made in good faith, and not as a speculative location, is a valid location on seven hundred and fifty feet on the course of the lode or vein in each direction from that point, and gives the right of possession to the discoverer until the other steps necessary for completing the title can be taken according to law.

The forcible eviction of the discoverer and locator of a mineral-bearing lode or vein from the lode or vein before the sinking of the whaft which the stat-

utes of Colorado require as one of the acts to complete title, and the prevention of his re-entry by threats of violence, excuse him, as against the party keeping him out of possession, and so long as he is kept out of it, from complying with the requirements of the act in respect of a shaft.

Discovery and appropriation are recognized as sources of title to mining claims ; and development by working as the condition of continued ownership, until a patent is obtained.

Whenever preliminary work is required to define and prescribe a located mineral claim, the law protects the first discoverer in the possession of the claim, until sufficient excavations and development can be made, so as to disclose whether a vein or deposit of such richness exists as to justify work to extract the metal.

A mere posting of a notice that the poster has located thereon a mining claim, without discovery or knowledge on his part of the existence of metal there, or in its immediate vicinity, is a speculative proceeding, which initiates no right.

This was an action for the possession of a mining claim in Pioneer Mining District, in the county of Dolores and State of Colorado. The claim was designated by the plaintiff as " The Hawk Lode " mining claim, and by the defendants as " The Johnny Bull Lode " mining claim. The plaintiff was a citizen of New York, and the defendants were citizens of Colorado. The complaint was in the usual form in actions for mining claims under the practice in Colorado. It contained two counts. The first alleged in addition to the citizenship of the parties as stated, the possession by the plaintiff, on the 17th of June, 1880, of the claim, which was fully described, his right to its possession by virtue of its location pursuant to the laws of the United States and of the State, and the local rules and customs of miners in the district, and by virtue of priority of possession ; the wrongful entry upon the premises by the defendants on the 30th of that month, their ousting the plaintiff therefrom, and unlawfully withholding the possession thereof from him to his damage of $50,000. The second count, in addition to the citizenship of the parties, the possession of the claim by the plaintiff, and the subsequent wrongful entry of the defendants and their ousting him, alleged that the defendants worked and mined in the claim, and dug out and removed from it large quantities of gold and silver-bearing ore of the value of $50,000, to the damage of the plaintiff in that amount. The plaintiff

therefore prayed judgment for the possession of the mining premises, and for damages of $100,000.

The answer of the defendants contained a specific denial of the several allegations of the complaint except that of the citizenship of the plaintiff, and as to that it averred their want of information and demanded proof. And it set up the discovery of the claim in controversy on the 30th of June, 1880, by the defendants Boaro and Hull, to which they gave the designation of "The Johnny Bull Lode;" and its definite location and record within ninety days thereafter, and their subsequent relocation of the claim, September 8, 1880, to avoid a conflict with an adjoining claim. They prayed, therefore, that they might be decreed its possession and ownership in accordance with their rights.

On the trial the plaintiff produced evidence tending to show that on the 17th of June, 1880, one Thomas Carroll, a citizen of the United States, whilst searching, on behalf of himself and the plaintiff, also a citizen, for valuable deposits of mineral, discovered, on vacant unoccupied land of the public domain of the United States, in the Pioneer Mining District mentioned, the outcrop of a vein or lode of quartz and other rock bearing gold and silver in valuable and paying quantities; that by an agreement between him and the plaintiff, pursuant to which the explorations were prosecuted, all lodes and veins discovered by him were to be located, one-fifth in his name and four-fifths in the name of the plaintiff; that on the day of his discovery Carroll designated the vein or lode as the "Hawk Lode," and posted at the point of discovery a plain sign, or notice in writing, as follows:

"HAWK LODE.

"We, the undersigned, claim 1,500 feet on this mineral-bearing lode, vein or deposit. Dated June 17, 1880.

"JOEL B. ERHARDT, $\frac{4}{5}$ths,
"THOMAS CARROLL, $\frac{1}{5}$th;"

that on the same day at the point of his discovery, Carroll commenced excavating a discovery shaft and sunk the same

to the depth of about eighteen inches or two feet on the vein; that on the 30th of the month, in the temporary absence of himself and the plaintiff, the defendant Boaro, with knowledge of the rights and claims of the plaintiff and Carroll, entered upon and took possession of their excavation, removed and threw away or concealed the stake upon which their written notice was posted, and, at the point of Carroll's discovery of the vein or lode, erected a stake and posted thereon a discovery and location notice as follows:

## "Johnny Bull Lode.

"We, the undersigned, claim 1,500 feet on this mineral-bearing vein or lode, running six hundred feet northeast and nine hundred feet southwest, and 150 feet on each side of the same, with all its dips and spurs, angles and variations.

"June 30th, 1880.                    "Anthony Boaro.
                                      "W. L. Hull."

The evidence also tended to show that Boaro and Hull entered upon the premises thus described about July 21, 1880, and remained thereafter continuously in possession; that threats of violence to the plaintiff and Carroll, if they should enter upon the premises or attempt to take possession of them, were communicated to Carroll as having been made by Boaro early in August following; that in consequence of such threats and the possession held by Boaro, Carroll was prevented from resuming work upon and completing the discovery shaft and from entering upon any other part of the lode or vein, and performing the acts of location required by law within the time limited. The evidence also tended to show that within ninety days from the discovery of the lode by Carroll, one French, on behalf of the plaintiff and Carroll, secretly caused the boundaries of the claim to be marked by six substantial posts so as to include the place of discovery and the premises in controversy, and filed in the office of the recorder of the county a location certificate setting forth the name of the lode, the date of the location, the names of the plaintiff and Carroll as locators, and the course of the lode or vein; and giving

such a description of the claim, with reference to natural objects and permanent landmarks, as would suffice to identify the same with reasonable certainty.

The evidence offered by the defendants tended to rebut that of the plaintiff, and to show that, on the 30th of June, 1880, when Boaro entered upon the ground in controversy, he found nothing on the surface to indicate a vein or lode, or that any excavation had been made, or stake erected, as alleged by the plaintiff, or that any portion of the ground claimed by the defendants had ever been previously located or claimed; that their discovery cut was commenced at a point thirty-five feet distant from the point described and claimed by Carroll as the point at which he had begun to sink the discovery shaft of the "Hawk Lode," and erected his stake and posted his notice, and that the top of the vein was at least four feet below the surface; that Carroll had abandoned all claim to the premises in controversy, and that his omission to perform the required location work was due to such abandonment, and not to any threats of the defendants, or of any of them, nor to the occupation of the ground by Boaro and Hull, or either of them; that neither the plaintiff nor Carroll ever demanded possession of or asserted any title to the premises until the working of the claim by the defendants had shown it to be valuable.

The evidence of the defendants also tended to show that they had commenced work upon the claim about July 21, 1880, and sank and excavated an open cut, striking the vein or lode at the depth of ten feet or more, and exposed therein a vein of rock in place bearing gold and silver; that no mineral nor any indications of a vein or lode were found until they reached the depth of seven or eight feet; and that subsequently and within the time limited by law, they marked the bounds of their claim on said lode, called by them the "Johnny Bull Lode," and recorded a location certificate, describing their claim by reference to natural objects and permanent landmarks, and complying in all respects with the requirements of the law.

The evidence being closed, the court was, among other things, requested to instruct the jury that from and after the date of the discovery by a citizen of the United States, upon

vacant unoccupied mineral lands, of the outcrop of a vein or body of mineral-bearing rock, the discoverer is entitled to the possession of the point at which he made his discovery, and of such a reasonable amount of adjacent ground as is necessary or incidental to the proper prosecution of the work of opening up or exposing the vein or body of mineral-bearing rock to the depth and within the time required by law, and that to such extent he is protected by law in his possession for the period of sixty days from the date of his discovery. But the court refused to give this instruction, and the plaintiff excepted to the refusal. The court charged the jury, among other things, that it was in evidence, and seemed to be conceded, that the notice on the stake put up by Carroll contained no specification or description of the territory claimed by the locators, as that they claimed a number of feet on each side of the discovery, or in any direction therefrom, and " in this respect," said the court, " the notice was deficient, and under it the locators could not claim more than the very place in which it was planted. Elsewhere on the same lode or vein, if it extended beyond the point in controversy, any other citizen could make a valid location ; for this notice, specifying no bounds or limits, could not be said to have any extent beyond what would be necessary for sinking a shaft ; " and also, that to entitle the plaintiff to recover, " it should appear from the evidence that Boaro entered at the very place which had been taken by Carroll, because, as Carroll's notice failed to specify the territory he wished to take, it could not refer to or embrace any other place than that in which it was planted." To the giving of these instructions the plaintiff also excepted. The defendant obtained a verdict, and to review the judgment entered thereon the plaintiff brought the case here on writ of error.

*Mr. Elihu Root* for plaintiff in error.

*Mr. C. S. Thomas* and *Mr. T. M. Patterson* for defendants in error.

Mr. Justice Field, after stating the case in the above mentioned language, delivered the opinion of the court :

As seen by the statement of the case, the court below, in its charge, assumed that the notice on the stake, placed by Carroll at the point of his discovery, contained no specification or description of the ground claimed by the locators, because it did not designate the number of feet claimed on each side of that point, or in any direction from it. The court accordingly instructed the jury that the notice was deficient, and under it the locators could not claim any more than the very place in which the stake was planted, and that elsewhere on the same lode beyond the point of discovery any other citizen could make a valid location.

In this instruction we think the court erred. The statute allows the discoverer of a lode or vein to locate a claim thereon to the extent of fifteen hundred feet. The written notice posted on the stake at the point of discovery of the lode or vein in controversy, designated by the locators as " Hawk Lode," declares that they claim fifteen hundred feet on the " lode, vein, or deposit." It thus informed all persons, subsequently seeking to excavate and open the lode or vein, that the locators claimed the whole extent along its course which the law permitted them to take. It is indeed indefinite in not stating the number of feet claimed on each side of the discovery point ; and must, therefore, be limited to an equal number on each side, that is, to seven hundred and fifty feet on the course of the lode or vein in each direction from that point. To that extent, as a notice of discovery and original location, it is sufficient. Greater particularity of description of a location of a mining claim on a lode or vein could seldom be given until subsequent excavations have disclosed the course of the latter. These excavations are to be made within sixty days after the discovery. Then the location must be distinctly marked on the ground, so that its boundaries can be readily traced, and, within one month thereafter, that is, within three months from the discovery, a certificate of the location must be filed for record in the county in which the lode is situated, containing the designation of the lode, the names of the locators, the date of the location, the

number of feet claimed on each side of the centre of the discovery shaft, the general course of the lode, and such a description of the claim, by reference to some natural object or permanent monument, as will identify it with reasonable certainty. Rev. Stat. § 2324 ; Gen. Laws of Colorado, §§ 1813–1814.

But during the intermediate period, from the discovery of the lode or vein and its excavation, a general designation of the claim by notice, posted on a stake placed at the point of discovery, such as was posted by Carroll, stating the date of the location, the extent of the ground claimed, the designation of the lode and the names of the locators, will entitle them to such possession as will enable them to make the necessary excavations and prepare the proper certificate for record. The statute of Colorado requires that the discoverer, before a certificate of location is filed for record, shall, in addition to posting the notice mentioned at the point of discovery, sink a shaft upon the lode to the depth of at least ten feet from the lowest part of such shaft under the surface, or deeper, if necessary, to show a defined crevice and to mark the surface boundaries of the claim. Before this work could be done by the plaintiff and his co-locator, the ground claimed by them was taken possession of by the defendants, the stake at the point of discovery, upon which the notice was posted, was removed, and Carroll was thereby, and by threats of violence, prevented from re-entering upon the premises and completing the work required to perfect the location and, prepare a certificate for record—at least, the evidence tended to establish these facts. If they existed, and this was a question for the jury, the plaintiff was entitled to recover possession of the premises. To the extent of seven hundred and fifty feet on the course of the lode on each side from the point of discovery, he and his co-locator were entitled to protection in the possession of their claim. They did not lose their right to perfect their location, and perform the necessary work for that purpose, by the wrongful intrusion upon the premises, and by threats of violence if they should attempt to resume possession. As against the defendants, they were entitled to be reinstated into the possession of their claim. They could not be deprived of their inchoate rights by the tortious

acts of others; nor could the intruders and trespassers initiate any rights which would defeat those of the prior discoverers.

The government of the United States has opened the public mineral lands to exploration for the precious metals, and, as a reward to the successful explorer, grants to him the right to extract and possess the mineral within certain prescribed limits. Before 1866, mining claims upon the public lands were held under regulations adopted by the miners themselves in different localities. These regulations were framed with such just regard for the rights of all seekers of the precious metals, and afforded such complete protection, that they soon received the sanction of the local legislatures and tribunals; and, when not in conflict with the laws of the United States, or of the State or Territory in which the mining ground was situated, were appealed to for the protection of miners in their respective claims, and the settlement of their controversies. And although since 1866 Congress has to some extent legislated on the subject, prescribing the limits of location and appropriation and the extent of mining ground which one may thus acquire, miners are still permitted, in their respective districts, to make rules and regulations not in conflict with the laws of the United States or of the State or Territory in which the districts are situated, governing the location, manner of recording, and amount of work necessary to hold possession of a claim. Rev. Stat. § 2324. In all legislation, whether of Congress or of the State or Territory, and by all mining regulations and rules, discovery and appropriation are recognized as the sources of title to mining claims, and development, by working, as the condition of continued ownership, until a patent is obtained. And whenever preliminary work is required to define and describe the claim located, the first discoverer must be protected in the possession of the claim until sufficient excavations and development can be made, so as to disclose whether a vein or deposit of such richness exists as to justify work to extract the metal. Otherwise, the whole purpose of allowing the free exploration of the public lands for the precious metals would in such cases be defeated, and force and violence in the struggle

for possession, instead of previous discovery, would determine the rights of claimants.

It does not appear, in this case, that there were any mining regulations in the vicinity of the " Hawk Lode," which affect in any respect the questions involved here. Had such regulations existed they should have been proved as facts in the case. We are therefore left entirely t the laws of the United States and the laws of Colorado on the subject. And the laws of the United States do not prescribe any time in which the excavations necessary to enable the locator to prepare and record a certificate shall be made. That is left to the legislation of the State, which, as we' have stated, prescribes sixty days for the excavations upon the vein from the date of discovery, and thirty days afterwards for the preparation of the certificate and filing it for record. In the judgment of the legislature of that State this was reasonable time.

This allowance of time for the development of the character of the lode or vein does not, as intimated by counsel, give encouragement to mere speculative locations, that is, to locations made without any discovery or knowledge-of the existence of metal in the ground claimed, with a view to obtain the benefit of a possible discovery of metal by others within that time. A mere posting of a notice on a ridge of rocks cropping out of the earth, or on other ground, that the poster has located thereon a mining claim, without any discovery or knowledge on his part of the existence of metal there, or in its immediate vicinity, would be justly treated as a mere speculative proceeding, and would not itself initiate any right. There must be something beyond a mere guess on the part of the miner to authorize him to make a location which will exclude others from the ground, such as the discovery of the presence of the precious metals in it, or in such proximity to it as to justify a reasonable belief in their existence. Then protection will be afforded to the locator to make the necessary excavations and prepare the proper certificate for record. It would be difficult to lay down any rules by which to distinguish a speculative location from one made in good faith with a purpose to make excavations and ascertain the character of the lode or vein, so as to determine whether

it will justify the expenditures required to extract the metal; but a jury from the vicinity of the claim will seldom err in their conclusions on the subject.

This case, as appears by the record, is brought in the name of one of the locators, Erhardt, who owns only four-fifths of the claim. But as a tenant in common with Carroll, he can maintain an action of ejectment for the possession of the premises, the recovery being not merely for his benefit but for that of his co-tenant, who is equally entitled with him to the possession.

It follows from what we have said that

*The judgment of the court below must be reversed and the case remanded for a new trial; and it is so ordered.*