REDDEN et al. v. HARLAN et al.

(Third Division. Fairbanks. May 22, 1905.)

No. 297.

1. MINES AND MINERALS—LOCATION—PLACER CLAIM.

Three acts are necessary to constitute a valid placer mining location: (1) discovery, (2) marking, and (3) recording. As between the United States and the locator, it is immaterial in what order these acts occur. If all three are performed before other rights intervene, it is sufficient.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Mines and Minerals, §§ 27, 33, 42, 45.]

2. SAME—DISCOVERY.

If discovery precedes marking and recording, they relate back to that act, but if the acts of staking and recording are performed first, the validity and life of the claim begins only with the act of discovery.

3. SAME—POSSESSION—TRESPASS.

A prospector in possession of a mining claim will be protected from trespass for a reasonable time, while he continues to search for mineral.

4. SAME—TRESPASSES—INJUNCTION.

Plaintiffs staked and recorded a placer mining location, but made no discovery. Eleven months thereafter defendants staked and recorded the same ground and began to sink a discovery

shaft. The plaintiffs ask the court to enjoin the defendants while plaintiffs sink a shaft to complete their prior claim. *Held*, that equity aids the vigilant and not those who sleep on their rights. The application denied.

On June 19, 1904, plaintiffs, Redden and Dempsey, respectively, set stakes and claimed placer mining claims Nos. 8 and 9 below discovery on Cripple Creek, in the Fairbanks mining district, Alaska, and by filing their location notices within the time limited by law. They made no discovery of mineral on either claim at any time.

On May 10, 1905, defendants formed an association of eight persons for the purpose of locating a tract of mining land of 160 acres. On the 10th they posted a notice of location of the "Midway Placer Claim" of 160 acres, including therein the two claims above mentioned. It is not shown where this notice was posted, other than that it was on the Midway claim. On the 11th they marked the boundaries of the association Midway claim so that they could be readily traced, but did not then or since make a discovery of mineral on any part of the tract.

On May 10, 1905, plaintiffs entered into a partnership to work the two claims in common, and Dempsey and one Smith started to the claims to begin work in prospecting. Smith reached the claims Nos. 8 and 9 on the 10th, and Dempsey on the 11th, and together they began the work of making camp and sinking a prospect hole.

On May 11th Kettleson, for defendants, entered on the Midway claim of 160 acres. He saw Dempsey arrive on 8 and 9 on that day, at 3 o'clock in the afternoon, with his pack and axe. On the 11th and 12th he made camp for the defendants on the Midway. Defendants' employés were engaged on the 11th in hauling mining machinery toward the Midway claim, and reached a point only a mile distant therefrom. On the 12th the machinery was not moved. On the 13th they reached

the upper end of No. 8 with and set the boiler, and began
to sink a prospect hole.

From the affidavits on the application for an injunction the
court finds that plaintiffs were in the actual possession of Nos.
8 and 9 on May 11th, at work and claiming under their
original staking and recording of June 19, 1904; that defend-
ants entered on said claims on May 13th under their location of
the Midway, and that both parties continued in possession and
engaged in a race to reach bed rock and make a discovery of
the first mineral until both were temporarily enjoined in this
case.

On May 16, 1905, while both parties were at work on 8 and
9, and before either had made a discovery of mineral, plain-
tiffs brought this action to restrain defendants from seeking
discovery on Nos. 8 and 9, and to establish their prior and
exclusive possessory right thereto.

John F. Dillon, for plaintiffs.
Fred M. Brown, for defendants.

WICKERSHAM, District Judge. Three acts are necessary
to the perfection of a valid placer mining location or entry in
Alaska: (1) A discovery of mineral on the ground covered
by the location; (2) a marking of its boundaries so that they
can be readily traced; and (3) a filing of the notice of loca-
tion for record in the recording district in which the claim is
situated within 90 days from the date of the discovery of the
claim. As between the United States and the locator it is
generally immaterial in what order these necessary acts are
performed. The marking of the boundaries may precede the
discovery and recording, or the recording may be first, and if
all three are performed, though not within the time fixed by law
or the rules and regulations, before other rights intervene or
attach to the land, it is sufficient, and the claim will be valid.

1 Lindley on Mines (2d Ed.) § 330; Nevada Oil Co. v. Home Oil Co. (C. C.) 98 Fed. 673.

A prospector who shall have made a prior and peaceable entry upon a portion of the unoccupied public domain not exceeding 20 acres in area as a placer mining claim, and in an effort to discover mineral thereon, will be protected in his possession from intrusion and trespass for a reasonable time, and so long as he continues in good faith to work and search there for mineral in compliance with the spirit of the mining laws. Erhardt v. Boaro, 113 U. S. 527, 5 Sup. Ct. 560, 28 L. Ed. 1113; Doe v. Waterloo Min. Co., 70 Fed. 455, 17 C. C. A. 190; Crossman v. Pendery (C. C.) 8 Fed. 693; Field v. Grey (Ariz.) 25 Pac. 793; 1 Lindley on Mines (2d Ed.) §§ 216, 217.

This is a suit in equity praying for an injunction to prevent the defendants from sinking a shaft on a tract of ground marked off by plaintiffs. Plaintiffs show that they marked off the tract on June 19, 1904, that the defendants entered on May 13, 1905, and allege that unless restrained defendants will make a prior discovery of mineral on the claim, and thus acquire a prior right to it under the mining laws. It is not shown to the court why the plaintiffs did not make the discovery or sink the shaft for that purpose during the preceding 11 months before defendants' entry. They allege that defendants have placed mining machinery on the claims, and with its superior working power will reach bed rock before plaintiffs can do so by thawing and sinking by the much slower process of wood fires. They make no attempt to show, and do not claim, that they did not have a reasonable time and opportunity to have made a prior discovery with wood fires, and the court will not presume, in the absence of proofs, that they could not have done the necessary excavations for that purpose during the 11 months elapsing after staking the ground and prior to the entry of the defendants.

A discovery of mineral is necessary to the validity of a placer mining claim. If the staking and recording shall follow after the date of a discovery, they relate back to the discovery, and, in case no intervening rights have attached, perfect the claim as of that date. But it is not so with discovery. If the acts of staking and recording are performed first, as in this case, and discovery last, the validity and life of the claim begins only with the discovery. 1 Lindley on Mines (2d Ed.) § 330.

In the case at bar there is yet no valid placer mining location by virtue of the acts performed by either plaintiff or defendant. Plaintiffs appeal to the court to hold defendants' hands while they sink their discovery shaft, and thus perfect their claim by discovering mineral, and allege that, unless the court does so, the defendants will first comply with the law, and make the first valid location of the ground. This appeal comes with little force from a locator who has had 11 months in which to comply with the law, and thus save his rights. Equity aids the vigilant, not those who sleep on their rights.

The greatest evil in the administration of the mining laws in Alaska is the habit of the shiftless and grasping in staking and recording mining claims, generally by power of attorney, whereby one person often acquires a claim to a large area of supposed mineral land, and excludes the willing miner from working it and developing the resources of the territory. Since the threat of a lawsuit lurks behind each of these pretended locations, the prospector generally passed it by, and thus the speculative locator controls the property. The legal effect of such a location is thus stated by the Supreme Court of the United States in the case of Erhardt v. Boaro, 113 U. S. 527, 536, 5 Sup. Ct. 560, 564 (28 L. Ed. 1113) :

"A mere posting of a notice on a ridge of rock cropping out of the earth, or on other ground, that the poster has located thereon a mining claim, without any discovery or knowledge on his part of the existence of metal there, or in its immediate vicinity, would

he justly treated as a mere speculative proceeding, and would not itself initiate any right. There must be something beyond a mere guess on the part of the miner to authorize him to make a location which will exclude others from the ground, such as the discovery of the presence of the precious metals in it, or in such proximity to it as to justify a reasonable belief in their existence."

One of the cures for this speculative reservation of mineral lands is presented in this case. The court ought not to assist a mere staker, after he has had a reasonable opportunity and time within which to do the necessary work to make a discovery on his claim, by restraining another prospector, who seeks to go upon the land and comply with the spirit of the law by mining for gold thereon.

In this case the court finds that plaintiffs were upon the claims in controversy a short time ahead of the defendants, and they now urge that they ought to be protected because at the time of defendants' entry they had begun work seeking a discovery and were in actual possession. In Price v. McIntosh, 1 Alaska, 301, the court quoted with approval the words of the Supreme Court of Utah in Eilers v. Boatman, 3 Utah, 159, 2 Pac. 66; 15 Morr. Min. R. 462, as follows:

"It is conceded by the respondents, and it is doubtless true, that, as between two locators, and as affecting their rights only, one cannot locate ground of which the other is in actual possession under claim or color of right, because such ground would not be vacant and unoccupied. This would affect the appellant's right to recover for the conflict area in dispute, it being an undisputed fact that at the very time when the Virginia was located by him the respondents, the locators of the Nabob, were in actual possession, sinking their incline shaft and occupying a shanty on the ground."

Upon appeal to the Supreme Court of the United States this case was affirmed (Eilers v. Boatman, 111 U. S. 356, 4 Sup. Ct. 432, 28 L. Ed. 454), and the case of Price v. McIntosh was also affirmed on appeal to the Circuit Court of Appeals for the Ninth Circuit (McIntosh v. Price, 121 Fed. 716, 58 C. C. A. 136).

It does not necessarily follow, however, that the court ought to grant an injunction to restrain the defendants in this case: (1) Because it does not appear that the plaintiffs have perfected their location, and have any exclusive right to the possession of the ground; (2) because no irreparable injury or other ground for equitable relief is shown; and (3) because if the plaintiffs have any right to relief they have a plain, speedy, and adequate remedy at law in ejectment.

The application for injunction is denied.