**HODGSON v. MIDWEST OIL CO. et al.** *

(Circuit Court of Appeals, Eighth Circuit. January 3, 1927.)

No. 7367.

1. **Tenancy in common** ⊜⇒55(3)—One tenant in common may maintain ejectment without joining cotenants.

One of several tenants in common may maintain ejectment without joining cotenants as plaintiffs.

*Rehearing denied March 4, 1927.

2. **Action** ⊜⇒50(7)—Causes in ejectment against defendants alleged to have acquired separate placer mining leases through previous joint surreptitious location held properly joined; "privity"; "affect"; (Oil Leasing Act Feb. 25, 1920, § 18 [U. S. Comp. St. § 4640¼i]; Comp. St. Wyo. 1920, § 5606, subd. 6, and § 5607).

That petition in ejectment alleged that defendants' predecessors made surreptitious location of placer mining claim previously located by plaintiff's predecessors, and thereafter defendants made joint application for oil and gas lease under Oil Leasing Act Feb. 25, 1920, § 18 (U. S. Comp. St. § 4640¼i), held to affect all parties to cause of action within Comp. St. Wyo. 1920, § 5607, and not demurrable for misjoinder of parties defendant or of causes of action under § 5606, subd. 6 or § 5607, notwithstanding separate leases for different tracts were issued, defendants being in privity of estate or interest; "privity" meaning derivative interest founded on, or growing out of, contract, connection, or bond of union between parties, mutuality of interest, mutual or successive relationship to same property rights; "affect," within section 5607, meaning to act on, produce effect on, touch.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Affect; Privity—Privy.]

3. **Mines and minerals** ⊜⇒23(1)—Original locator of placer mining claim after discovery must do required assessment work, or possessory rights terminate.

An original locator, after discovery of placer mining claim, and his assigns, are required as condition subsequent to do required assessment work periodically, and, on failure to do so during any interval fixed by law, all possessory rights terminate.

4. **Mines and minerals** ⊜⇒26—Ordinarily, original locator of placer mining claim has right to relocate equal to others after termination of his rights.

Ordinarily, and in absence of any withdrawal, original locator of placer mining claim after discovery would have right to relocate after termination of his rights because of failure to do required assessment work equal only to any other person qualified to locate.

5. **Mines and minerals** ⊜⇒38(9)—Allegations that defendants entered and ousted original locators of placer mining claim held insufficient to excuse failure to do assessment work.

Allegations, in petition in ejectment, that defendants entered and ousted plaintiff's predecessors, original locators of placer mining claim after discovery, and unlawfully withheld possession of premises, held insufficient to show prevention from doing required assessment work, to excuse failure to do such work, so as to show plaintiff's right to possession, in absence of allegations that plaintiff or his predecessors offered or attempted to do assessment work thereafter, or of threats of violence or physical opposition.

6. **Constitutional law** ⊜⇒42—To be entitled to present unconstitutional taking of property without due process, plaintiff must show he had property.

Before plaintiff can present substantial case of violation of his constitutional right by taking

his property without due process of law, he must first show that he had the property.

In Error to the District Court of the United States for the District of Wyoming; T. Blake Kennedy, Judge.

Ejectment by Joseph Hodgson against the Midwest Oil Company and another. Defendant's demurrer to the petition was sustained, and the cause dismissed (297 F. 273), and plaintiff brings error. Affirmed.

Transferred from the Supreme Court of the United States, 269 U. S. 534, 46 S. Ct. 100, 70 L. Ed. 399.

J. M. Hodgson, of Denver, Colo. (F. E. Pendell, of Denver, Colo., and R. P. Stewart, of Los Angeles, Cal., on the brief), for plaintiff in error.

Harold D. Roberts, of Denver, Colo. (Tyson S. Dines, Tyson Dines, Jr., and Peter H. Holme, all of Denver, Colo., on the brief), for defendants in error.

Before KENYON, Circuit Judge, and SCOTT and SANBORN, District Judges.

SCOTT, District Judge. On June 12, 1925, Joseph Hodgson, plaintiff in error and plaintiff below, filed his petition in an action in ejectment against defendants in error in the District Court of the Sixth Judicial District of Wyoming for Natrona County, to recover possession, and incidentally to establish his title, to a quarter section of land claimed as a valid placer mining claim. The defendants removed the case to the District Court of the United States for the District of Wyoming, both upon the ground of diverse citizenship with requisite amount in controversy, and upon the ground that the suit arises upon the Constitution and laws of the United States.

Plaintiff's petition, when divested of repetition and prolixity of statement, in substance alleges: That the defendants the Midwest Oil Company and the Wyoming Associated Oil Corporation are citizens of the states of Arizona and Delaware, respectively. That plaintiff now and at all times mentioned is a citizen of the United States, qualified to locate and hold placer mining claims. That on May 2, 1887, the northeast quarter of section 14, township 40 north, range 79 west, of the Sixth Principal Meridian and in the county of Carbon, territory of Wyoming, now county of Natrona and state of Wyoming, was a part of the vacant and unappropriated domain of the United States, over which surveys had been extended, and was free and open to occupation, exploration, location, entry, and purchase under the placer mining laws of the United States. That on said date John Eames and seven others, each citizens of the United States, entered upon the above-described quarter section, and made valid discovery of valuable deposits of petroleum oil in certain and substantial quantities, and the said John Eames and seven others then and there associated themselves together for the purpose of locating, claiming, holding, and working in good faith said quarter section as an oil placer mining claim, and on said date as an association of eight persons located said quarter section as a placer mining claim by securely fixing on said land a notice in printed and written letters containing the name of the claim, to wit, the Reif, the names of the locators, the date of discovery, and number of acres claimed. That thereafter said locators designated and distinctly marked upon the ground the surface boundaries of the claim. That on August 16, 1887, said locators recorded said Reif oil placer mining claim in the office of the county clerk and register of deeds in the county of Carbon, territory of Wyoming, by filing in said office a proper location certificate which was duly recorded. That said John Eames and his colocators have complied with all requirements of the laws of the United States, of the territory and state of Wyoming, and with the local customs and rules of miners of the oil mining district within which said Reif claim is situated, in the matter of doing the annual assessment work during each year, by performing, or causing to be performed thereon, not less than $100 worth of labor and improvements made during each year since the year 1887, down to and including the year 1920, save and excepting those certain years between 1887 and the year 1920, when the requirements of the Revised Statutes of the United States with reference to doing the annual labor upon mining claims were suspended by the various acts and resolutions of Congress.

That said John Eames and his colocators remained, and continued to be, in the actual, open, notorious, continuous, exclusive, and adverse possession of the said quarter section known as the Reif oil placer mining claim, from the date of the discovery on May 2, 1887, down to April 22, 1921, and that more than $500 worth of labor had been expended on improvements made upon said Reif claim by said Eames and his colocators prior to the 27th day of September, 1909. That thereby the said John Eames and his colocators became vested with the fee title in and to said Reif mining claim under the pro-

visions of section 2332, Revised Statutes of the United States (Comp. St. § 4631), and were then and there entitled to a patent. That the said Reif mining claim has never been forfeited or abandoned.

That, by the executive order of withdrawal issued on the 27th day of September, 1909, all vacant and unappropriated public lands and petroleum deposits in the public domain lying in said township and state were withdrawn from all forms of location and entry under the mineral public land laws of the United States, and that said executive order was never revoked prior to February 25, 1920.

That on the date of said executive order, and on March 10, 1910, and ever since, said quarter section was a valid and subsisting oil placer mining claim by virtue of actual discovery and the doing of the various acts of location as required by law, and the performing thereon of not less than $100 worth of labor or improvements made during each year since May 2, 1887, down to and including the year 1920, by the said John Eames and his colocators.

That by a proper deed of conveyance plaintiff became, and still is, the owner in fee of the right, title, interest, estate, and claim of the said John Eames in and to said quarter section, and that the defendants have never acquired by conveyance or operation of law the rights, titles, and interests of the said John Eames and his colocators.

That on or about the 22d day of April, 1921, the defendants wrongfully and unlawfully entered into the actual, exclusive, and adverse possession of the said quarter section, ousting plaintiff's predecessors therefrom, and have ever since said time wrongfully and unlawfully withheld from the plaintiff and his predecessors the possession of said premises.

That on March 10, 1910, Wm. G. Henshaw and seven others secretly, fraudulently, clandestinely, and unlawfully entered upon said Reif mining claim, and made a pretended location thereof under the name of the Tank oil placer mining claim, and that said unlawful location of the Tank mining claim by Wm. G. Henshaw and his associates covered the premises embraced within the boundaries of the Reif mining claim. That, at the time of said location of the Tank mining claim by said Henshaw and his associates, said quarter section was not unappropriated public domain, and was not, on the 10th day of March, 1910, or at any time since, open to exploration, occupation, location, entry, and purchase under the mining

laws of the United States, and was not subject to disposal by the government of the United States.

That on the 19th day of August, 1920, the defendants claiming to be holders of the mining title to said quarter section, initiated under said invalid location, filed in the United States Land Office at Douglas, Wyo., a joint application for an oil and gas lease on said land under the provisions of section 18 of the Act of Congress of February 25, 1920, commonly known as the Oil Leasing Bill (Comp. St. § 4640¼i), and alleged in their application that their claim was initiated under the placer mining laws prior to July 3, 1910, to wit, on March 10, 1910, by location and entry by said Wm. G. Henshaw and associates.

That on April 6, 1921, the Commissioner of the General Land Office of the United States by letter and decision recommended to the Secretary of the Interior that an oil and gas lease be issued to the defendant the Midwest Oil Company for the northwest quarter of the northeast quarter of said section, and to the defendant the Wyoming Associated Oil Corporation for the northeast quarter of the northeast quarter and the south one-half of the northeast quarter of said section, and that said letter and decision was approved and confirmed on April 22, 1921, by the Secretary of the Interior, and oil and gas leases covering said premises were thereafter executed and delivered to the defendants as of the 19th day of August, 1920. By the terms of said leases the United States attempted to grant and lease to the defendants the exclusive right and privilege to drill for, mine, extract, remove, and dispose of all oil and gas deposits in and under said premises for a period of 20 years, with the alleged preferential right to renew for successive periods of 10 years, and reserving to the United States a rental of $1 per acre per annum during the continuance of said leases, together with a royalty on all oil produced from said premises, et cetera.

The petition then by appropriate allegations draws in question the constitutionality of the Act of February 25, 1920, alleging contravention of the Fifth Amendment to the Constitution of the United States. Much more is set out in the petition by way of conclusion, argument, and explanation of the plaintiff's contentions, but we do not deem it necessary to set those matters out here.

[1] To the plaintiff's petition the defendants interposed demurrers both special and general. The special demurrer is in three counts. The first count raises the question that there

is a defect of parties plaintiff, in that but one of several tenants in common institutes the suit. The second count raises the question of misjoinder of causes of action; and the third count of misjoinder of parties defendant. The general demurrer contained in the fourth count pleads that the petition does not state facts sufficient to constitute a cause of action against the defendants or either of them.

The District Court does not appear to have considered the first ground of the demurrer in its opinion. 297 F. 273. We think, however, that ground without merit. Erhardt v. Boaro, 113 U. S. 527, at page 537, 5 S. Ct. 560, 28 L. Ed. 1113.

[2] Counts 2 and 3 of the demurrer raising the questions of misjoinder of parties and causes of action were considered by the trial court together. We think this was entirely proper, as in the instant case they were necessarily determined upon the same principle. The reasoning of the trial court sustains both of these grounds of the demurrer, resting the decision upon a construction of the Wyoming statute. We quote the statute from the opinion of the trial court:

"The Wyoming statute also provides as to what causes of action may be united in the same petition. Wyoming Comp. Stats. 1920, § 5606, subdiv. 6, which reads: 'Claims to recover real property, with or without damages, for the withholding thereof, the rents and profits of the same and the partition thereof.' It seems that the application of the foregoing provision is limited, however, in that by section 5607 immediately following, it is provided: 'The causes of action so united must not require different places of trial, and, except as otherwise provided, must affect all the parties to the action.'"

The trial court then proceeds: "The question is: Does the case at bar come within the provision of the last-quoted statute? Here we have a case in which the two defendants are holding, by virtue of leases granted by the United States, entirely separate and distinct parcels of land, to which plaintiff claims the right of possession, and from which he seeks to eject the defendants. It is not asserted in the petition that the defendant Midwest Company is claiming or withholding possession of the south parcel, or that the defendant Wyoming Associated Oil Corporation is asserting or withholding possession of the north parcel of the land in controversy, but it does appear that each of the defendants is claiming and withholding a separate parcel of the land by virtue of a lease independent of the other, although granted at the same time by the Interior Department. Manifestly, therefore, in an action of ejectment, plaintiff's cause of action against a party defendant asserting a claim to and withholding possession of one parcel of land under a separate grant cannot affect the other party defendant, asserting claim to, and withholding possession of, a separate and distinct parcel, under a different grant. In other words, there is no claim of joint possession of the land in controversy by the defendants so as to affect all the parties to the action, which this court conceives to be the limitation in section 5607, supra."

We think the reasoning of the trial court overlooks material matter for consideration. The leases in question, according to the allegations of the petition, were issued and delivered under section 18 of the Oil Leasing Act approved February 25, 1920. That section provides: "That upon relinquishment to the United States, filed in the General Land Office within six months after the approval of this act, of all right, title, and interest claimed and possessed prior to July 3, 1910, and continuously since by the claimant or his predecessor in interest under the pre-existing placer mining law to any oil or gas-bearing land upon which there has been drilled one or more oil or gas wells to discovery embraced in the Executive order of withdrawal issued September 27, 1909, and not within any naval petroleum reserve, and upon payment as royalty to the United States of an amount equal to the value at the time of production of one-eighth of all the oil or gas already produced except oil or gas used for production purposes on the claim, or unavoidably lost, from such land, the claimant, or his successor, if in possession of such land, undisputed by any other claimant prior to July 1, 1919, shall be entitled to a lease thereon from the United States for a period of twenty years," et cetera.

The allegations of the plaintiff's petition show that the plaintiff's predecessors Eames and seven others located the quarter section in controversy on May 2, 1887, as the Reif claim, and continued their compliance with the mining laws by the doing of development work and improvements up to and including the year 1920; that on the 10th day of March, 1910, Henshaw and his seven associates made a surreptitious location of the same quarter section as the Tank claim; that on the 19th day of August, 1920, the defendants, as successors of Henshaw and his associates, made a joint application for an oil and gas lease on said quarter section under

said Act of February 25, 1920; and that on April 6, 1921, the Commissioner of the General Land Office by letter and decision recommended to the Secretary of the Interior that an oil and gas lease under section 18 of the act aforesaid be issued to the applicants, and that said letter and decision was approved and confirmed by the Secretary on April 22, 1921, and the leases issued and delivered as of August 19, 1920. Now, while it is true that, upon the conclusion of the hearing provided by the Act of February 25, 1920, two leases in severalty for different tracts in the same quarter section were issued, nevertheless the previous rights in the land surrendered and the proceeding which was the basis of the lease were joint, and it is the invalidity of this previous claimed joint ownership and the joint proceedings before the Interior Department that is drawn in question by the plaintiff's action. The sole basic questions sought to be litigated are questions in which the defendants are jointly interested. It seems to us that the defendants here are in privity both in estate and with respect to a community of interest in the subject-matter, that is, the questions to be litigated. Privity is defined (32 Cyc. 392) as: "1. A derivative kind of interest, founded upon, or growing out of, the contract of another. 2. A connection or bond of union between parties as to some particular transaction. 3. Connection. 4. Interest. 5. Mutuality of interest. 6. A mutual or successive relationship to the same rights of property. 34 C. J. 1010, § 1432." Of course, considering merely the leases as direct grants from the United States, that succession incident to privity of estates would be absent, but considering the origin of the right of each of the defendants, we think successive interest would be present. The Midwest Oil Company's right to a lease of the northwest quarter of the northwest quarter of the section would rest upon the previous tenancy in common to the whole section; and the same would be true of the Wyoming Associated Oil Corporation's right to a lease to the remaining 120 acres. The right of each, therefore, rests upon the right of the other. But, waiving the question of privity of estate technically considered, there is a privity of interests, a mutuality of concern in the questions to be litigated. The language of the statute is that "the causes of action so united * * * must affect all the parties to the action." Now, what is the plaintiff's cause of action as stated? Surely it embraces the joint acts and conduct of the defendants and their predeces-

sors in making the surreptitious location, in ousting the plaintiff, in generally prosecuting the proceeding for procuring the leases. In short, in generally depriving him of his property. Now, does this cause of action—or causes of action considered separately—affect all parties to the action? The word "affect" is defined by Webster as "to act on; produce an effect on; touch." We think the special demurrer as embodied in counts 2 and 3 of the pleading should have been overruled. The trial court, however, does not appear to have rested judgment upon the disposal of these grounds, which would have resulted merely in an abatement of the action. The court proceeded to consider the general demurrer which went to the merits of the pleading, and, after careful consideration of the merits, entered a general judgment sustaining the demurrer and dismissing the action. [3] The question now occurs, Was the general demurrer properly sustained? That is, assuming the sufficiency of the parties to the record, and that no misjoinder of parties or causes of action existed, Does the plaintiff's petition state a cause of action in ejectment? The first matter to be considered in this connection is whether the petition shows adequate title in the plaintiff at the time of the commencement of the action. According to the allegations of the petition, plaintiff's grantor was an original locator after discovery. It is proper, therefore, to consider what the status of such a locator was. Upon this question the opinion of Mr. Justice Pitney in Union Oil Co. v. Smith, 249 U. S. 337, 39 S. Ct. 308, 63 L. Ed. 635, is enlightening. We quote at some length from that decision:

"In the California courts the right of a locator before discovery while in possession of his claim and prosecuting exploration work is recognized as a substantial interest, extending not only as far as the pedis possessio but to the limits of the claim as located; so that if a duly qualified person peaceably and in good faith enters upon vacant lands of the United States prior to discovery but for the purpose of discovering oil or other valuable mineral deposits, there being no valid mineral location upon it, such person has the right to maintain possession as against violent, fraudulent, and surreptitious intrusions so long as he continues to occupy the land to the exclusion of others and diligently and in good faith prosecutes the work of endeavoring to discover mineral thereon. Miller v. Chrisman, 140 Cal. 440, 447 [73 P. 1083, 74 P. 444, 98 Am. St. Rep. 63] (case affirmed 197 U. S. 313 [25 S. Ct. 468, 49 L.

Ed. 770]); Weed v. Snook [144 Cal. 439, 77 P. 1023] ubi supra; Merced Oil Mining Co. v. Patterson, 153 Cal. 624, 625 [96 P. 90; Id.] 162 Cal. 358, 361 [122 P. 950]; McLemore v. Express Oil Co., 158 Cal. 559, 562 [112 P. 59, 139 Am. St. Rep. 147].

"To what extent the possessory right of an explorer before discovery is to be deduced from the invitation extended in section 2319 [Comp. St. § 4614] to what extent it is to be regarded as a local regulation of the kind recognized by that section and the following ones, and to what extent it derives force from the authority of the mining states to regulate the possession of the public lands in the interest of peace and good order, are questions with which we are not now concerned. Nor need we stop to inquire whether the right is limited to the ground actually occupied in the process of exploration, or extends to the limits of the claim. These questions and others that suggest themselves are not raised by the present record, which concerns itself solely with the rights asserted by the defendant under the Act of 1903. Whatever the nature and extent of a possessory right before discovery, all authorities agree that such possession may be maintained only by continued actual occupancy by a qualified locator or his representatives engaged in persistent and diligent prosecution of work looking to the discovery of mineral.

"But, by the provisions of the Revised Statutes above cited, a discovery of mineral by a qualified locator upon unappropriated public land initiates rights much more substantial as against the United States and all the world. If he locates, marks, and records his claim in accordance with section 2324 [Comp. St. § 4620] and the pertinent local laws and regulations, he has, by the terms of section 2322 [section 4618] an exclusive right of possession to the extent of his claim as located, with the right to extract the minerals, even to exhaustion, without paying any royalty to the United States as owner, and without ever applying for a patent or seeking to obtain title to the fee; subject, however, to the performance of the annual labor specified in section 2324, for upon his failure to do this the claim is open to relocation by others at any time before resumption of work upon it by the original locator.

"If not content to rest upon the right conferred by section 2322, the qualified locator may obtain a patent for his claim by complying with the conditions prescribed by sections 2325 and 2326 [sections 4622, 4623].

"But, even without patent, the possessory right of a qualified locator after discovery of minerals upon the claim is a property right in the full sense, unaffected by the fact that the paramount title to the land is in the United States (Rev. Stats. § 910 [Comp. St. § 1533]), and is capable of transfer by conveyance, inheritance, or devise. Forbes v. Gracey, 94 U. S. 762, 763, 767 [24 L. Ed. 313]; Belk v. Meagher, 104 U. S. 279, 283, 285 [26 L. Ed. 735]; Del Monte Mining Co. v. Last Chance Mining Co., 171 U. S. 55, 78 [18 S. Ct. 895, 43 L. Ed. 72]; Elder v. Wood, 208 U. S. 226, 232 [28 S. Ct. 263, 52 L. Ed. 464].

"Actual and continuous occupation of a valid mining location based upon discovery is not essential to the preservation of the possessory right. The right is lost only by abandonment, as by nonperformance of the annual labor required by section 2324. Belk v. Meagher, 104 U. S. 279, 283, 284 [26 L. Ed. 735]; Black v. Elkhorn Mining Co., 163 U. S. 445, 450 [16 S. Ct. 1101, 41 L. Ed. 221]; Farrell v. Lockhart, 210 U. S. 142, 147; Bradford v. Morrison, 212 U. S. 389, 394 [29 S. Ct. 349, 53 L. Ed. 564].

"After this brief review of the mining laws there is little danger of mistaking the true intent and meaning of the Act of Congress of February 12, 1903 [Comp. St. § 4636]. Title thirty-two, chapter six, Revised Statutes, therein referred to, embraces the sections we have cited. And it is not to be doubted that the terms 'assessments' and 'annual assessment labor' refer to the annual labor required by section 2324, that being commonly called by miners the 'annual assessment' or the 'assessment work,' and so described in many judicial opinions and in at least two acts of Congress, passed respectively November 3, 1893, c. 12, 28 Stat. 6, and July 2, 1898, c. 563, 30 Stat. 651. See El Paso Brick Co. v. McKnight, 233 U. S. 250, 255, 256, 258 [34 S. Ct. 498, 58 L. Ed. 943, L. R. A. 1915A, 1113].

"And it is important to observe that in these acts of Congress, as in the practice of miners, 'assessment work' had nothing to do with locating or holding a claim before discovery. On the contrary it was the condition subsequent prescribed by Congress to be performed in order to preserve the exclusive right to the possession of a valid mineral land location upon which discovery had been made. McLemore v. Express Oil Co., 158 Cal. 559, 563 [112 P. 59, 139 Am. St. Rep. 147]."

[4, 5] From the foregoing it is clear that such original locator and his assigns was required as a condition subsequent to do the so-called "assessment work" periodically,

and, upon failure so to do during any interval fixed by law, all possessory rights terminated. Ordinarily, and in the absence of any withdrawal, the locator would have the right to relocate, equally only, however, to any other person qualified to locate. The allegations of the petition show the doing of "assessment work" up to and including the year 1920. No showing of "assessment work" during the interval of January 1, 1921, to July 1, 1922, the period fixed by the Act of August 24, 1921 (Comp. St. § 4620), is made in the petition. On the contrary, the allegation is that there was "not less than $100 worth of labor, or improvements made, on said Reif oil placer mining claim, during each year since May 2, 1887, down to and including the year 1920, by the said John Eames and his colocators and co-owners of said oil placer mining claim." The clear implication is that no work was done or improvements made after that time by the plaintiff or his grantors. Plaintiff's contention, however, is that such work or improvements were obviated by reason of the ouster pleaded to have taken place on April 22, 1921. The question then occurs, Is the mere statement in the petition that on such date the defendants entered upon the land ousting the "plaintiff's predecessors in interest therefrom, and have ever since such time wrongfully and unlawfully withheld from the plaintiff and his predecessors in interest the possession of said premises," a sufficient plea of prevention from the doing of assessment work or the making of improvements?

Lindley on Mines (3d Ed.) § 634, has the following observation: "A locator cannot be deprived of his inchoate rights by the tortious acts of others, but there must be a bona fide effort to perform the work. The acts and hostile declarations of one asserting an adverse right must be of so serious and menacing a character as to satisfy a man of ordinary prudence that it would be unsafe to begin work."

Now in the instant case there is no plea of any threat of violence or physical opposition whatever. There is no allegation in the petition that the plaintiff or his predecessors, or any of them, ever offered or attempted to do assessment work during the period named. The formal plea of entry and ac-

tual, exclusive and adverse possession of a quarter section of land constituting a placer mining claim located after discovery, would not seem to be equivalent to an allegation of such hostile acts and declarations as to satisfy a man of ordinary prudence that it would be unsafe to begin work. Plaintiff in error, among others, relies upon the case of Erhardt v. Boaro, 113 U. S. 527, 5 S. Ct. 560, 28 L. Ed. 1113, as supporting his contention. In the opinion in that case it was said in referring to the assessment work: "Before this work could be done by the plaintiff and his colocator, the ground claimed by them was taken possession of by the defendants, the stake at the point of discovery, upon which the notice was posted, was removed, and Carroll was thereby, and by threats of violence, prevented from re-entering upon the premises and completing the work required to perfect the location and prepare a certificate for record—at least, the evidence tended to establish these facts. If they existed, and this was a question for the jury, the plaintiff was entitled to recover possession of the premises." We think the clear implication of this language tends to support the text quoted from Lindley, supra. Now, it seems to us clear that, if an adequate legal excuse for not doing the assessment work or making the improvements is not stated in the petition, then the plaintiff has failed to state a cause of action in ejectment, for it is well settled that a failure to do the work or have an adequate legal excuse automatically terminates the locator's right of possession, and in the instant case would have terminated before the commencement of the action. The plaintiff, therefore, fails to plead the requisite title in himself to show right of recovery.

[6] In view of these conclusions, we deem it unnecessary to consider the question of the alleged unconstitutionality of the leasing act. Before a plaintiff can present a real substantial case of violation of constitutional right by taking of his property without due process of law, he must first show that he has had the property. We think the action of the trial court in sustaining the general demurrer and dismissing the plaintiff's action was correct, and the judgment is therefore affirmed.