LIKAITS v. JOHNSON. FOSTER v. SAME. NICKELL v. SAME.

(Third Division. Cordova. March 18, 1914.)

Nos. 76, 78, 79.

MINES AND MINERALS ☞14(2)—LOCATION—POWER OF ATTORNEY.

By Act Cong. Aug. 1, 1912 (37 Stat. 242, c. 269, § 2 [U. S. Comp. St. 1916, § 5055]), it was provided "that no person shall hereafter locate any placer-mining claim in Alaska as attorney for another unless he is duly authorized thereto by a power of attorney in writing, duly acknowledged and recorded in any recorder's office in the judicial division where the location is made." *Held*, where the locator makes a discovery of mineral within the boundaries of the claim, files and records a notice of location, marks the boundaries, so they can be readily traced, and files and records a power of attorney from his principal within the division, and does each of the acts before any other rights intervene or attach to the land, it is sufficient and the claim will be valid, as against subsequent locators and claimants, without regard to the order in which such necessary acts of location happen or are performed.

In this action plaintiff seeks to recover possession of a twenty-acre placer mining claim in what is known as the

☞See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Shushana mining region, Alaska. Plaintiff claims to be the owner of said mining claim and that on or about the 20th day of August, 1913, the defendant unlawfully entered thereupon and ousted the plaintiff therefrom.

The interveners, James, Nelson, Johnson, and Wales allege that on May 25, 1913, they made two contiguous lode locations; that about August 20, 1913, the plaintiff entered upon a portion of the ground covered by said lode locations and attempted to make the placer location alleged by plaintiff in his complaint.

The defendant Johnson by his answer claims that he is the owner of the placer claim known as No. 1 Above Discovery on Bonanza Creek, being the same ground covered by plaintiff's placer claim, described in his complaint; that the defendant prior to July 30, 1913, was the owner and in the possession thereof and ever since has been the owner and in possession thereof by right of discovery and location, and denies that plaintiff has any right in or to said placer mining.

The case is submitted upon an agreed statement of facts entered into in writing by the attorneys for the plaintiff, defendant and interveners, from which it appears:

That the defendant Johnson outfitted or grubstaked William E. James at Dawson about September 1, 1912, to go upon a prospecting trip near the headwaters of White river, in the territory of Alaska, James taking with him a power of attorney executed by Johnson to James, dated June 7, 1909, authorizing James to make placer mining locations in Alaska as attorney in fact for Johnson; that about Christmas, 1912, James, together with Nelson and Wales, reached Beaver creek, near the international boundary line between Alaska and the Yukon Territory and camped at a cabin owned by James about 40 miles from the headwaters of the Shushana. In March, 1913, Nelson and James made a trip to the Shushana prospecting, and returned to the cabin at Beaver creek, remaining there until the middle of April, when James, Nelson, and Wales left for the Shushana region, taking their outfit for the summer's prospecting. They left a considerable portion of their outfit at Beaver creek. James also left said power of attorney at Beaver creek, with his other effects. At this time there was no United States commissioner or recorder in said White River district, but on May 7, 1913, the judge of this court established the said White River commissioner and recording

precinct, and appointed one H. E. Morgan commissioner thereof. James, Nelson, and Wales reached Shushana late in April, and James made the first discovery of gold in said district on Bonanza creek early in May. On July 8, 1913, he located the placer ground in controversy, consisting of 20 acres on Bonanza creek, a tributary of the Shushana, designating it as placer claim No. 1 Above Discovery on Bonanza. On May 13th Nelson left for Dawson to confer with defendant Johnson and to arrange for an outfit for placer mining during the summer. En route he went through Canyon City, Y. T., where he learned that on the previous day said H. E. Morgan had departed for Dawson. Nelson continued his journey, overtook Morgan, and traveled with him to Dawson. Said Morgan did not know of his appointment as commissioner of the said White River precinct until after his arrival at Dawson, neither did Nelson know of it. Nelson met Johnson in Dawson, where Johnson provided for an outfit for placer mining operations costing over $600. They were also then advised of the act of Congress of August 1, 1912, requiring that powers of attorney be recorded. Johnson then executed his power of attorney to James, dated May 28, 1913, and forwarded same to Steele Creek, Alaska, in the Forty-Mile district of Alaska, being in the Fourth judicial division, where the same was recorded June 23, 1913. Nelson returned to the Shushana, traveling with several others, and they arrived at the Shushana diggings about June 26, 1913. The said Morgan arrived in the Shushana on or about July 20, 1913, and established a recording office.

Upon the arrival of Nelson and party in the Shushana about June 26, 1913, with the information that Morgan would soon be there and a recording office established, James sent one Gates to his cabin on Beaver creek to obtain the Johnson power of attorney, that same might be promptly recorded upon the arrival of Morgan. Gates met with an accident, which so detained him that he did not return to Shushana until August 7, 1913. On said date, to wit, August 7, 1913, James, as attorney in fact for Johnson, having performed all the acts required by law in the matter of discovery, marking the boundaries of said placer claim No. 1 Above Discovery on Bonanza, filed a notice of location thereof in due form with the said Morgan as United States commissioner and ex officio recorder, and same was recorded at page 89, volume 1, of the mining

5 A.R.—5

records of said White River precinct and recording district, Alaska, and also on the same day recorded said power of attorney from Johnson to James.

That plaintiff Likaits arrived in the Shushana diggings early in August, went upon the ground in controversy included in the claim designated as No. 1 Above Discovery on Bonanza Creek, and made a discovery of mineral thereon on August 20, 1913. On the same day he posted a notice of location within a few feet of the notice posted by James for defendant Johnson. Defendant's location notice, as well as plaintiff's, were both posted upon the area in conflict with the Bonanza and Eldorado lode locations made by interveners. That on May 25, 1913, interveners made valid discovery and location of two certain lode locations or claims designated as the Bonanza and Eldorado quartz mining claims, which extend almost at right angles across the lower or southerly 500 feet of placer claim No. 1 Above Discovery on Bonanza, claimed by defendant. That it was then believed by the defendant Johnson, and also by James and Nelson, that the White River region of Alaska, including the so-called Shushana diggings, was within the Forty-Mile district, where the recording office is at Steele Creek, Alaska. The White River region had been included in the Forty-Mile recording district until the Fourth judicial division was created in 1909. The fact that it was thereby segregated from the Forty-Mile district had not become generally known to the prospectors in the White River region. The general custom was to send location notices and other instruments for record to the recorder at Steele Creek in the Forty-Mile district, where the same were recorded as late as the summer of 1913. This custom was known to James and his companions, and also to the defendant Johnson, all of whom fully relied and acted upon the same.

Plaintiff on August 20, 1913, staked and marked the boundaries of the placer ground claimed and described in his complaint, and otherwise complied with the laws of the United States and of the territory of Alaska in force at that date, and the defendant's notice of location and the stakes and markings established for the defendant by James in May, 1913, as well as the monuments of the lode locations, all remained on the ground and were seen by plaintiff. Plaintiff duly recorded his notice of location in the said White River precinct on September 19, 1913.

It is agreed that judgment in this action for possession of the ground in controversy may include judgment for $1 damages and costs of suit. The mineral character and value of the ground is admitted. It is also admitted that plaintiff and said James, as attorney in fact for defendant, each made a satisfactory discovery of placer gold on the dates of their respective admitted locations. It is admitted that both locations were properly staked upon the ground. It is admitted that all acts performed by the defendant and in his behalf were regular and sufficient to constitute a valid location of the ground, had the power of attorney from said defendant to James been duly recorded in any recording office in the Third judicial division of Alaska prior to July 8, 1913. It is admitted that the acts of plaintiff were sufficient to constitute a valid location, if the ground was then open for prospecting and subject to location in the manner provided by law, and it is admitted that all subsequent acts by plaintiff or in his behalf were in due form.

T. J. Donohoe, of Valdez, O. A. Tucker, of Juneau, and C. M. Frazier, for plaintiffs.

Maurice D. Leehey and J. J. Finnegan, both of Seward, for defendants.

BROWN, District Judge. Prior to August 1, 1912, any citizen of the United States, or one who had declared his intention to become such, could locate lode or placer mining claims in Alaska without limit as to number. He could also locate the same as agent for another without having any power of attorney, although it had long been the custom of prospectors to procure such powers of attorney.

By the act of Congress passed August 1, 1912, it is provided:

"That no person shall hereafter locate any placer-mining claim in Alaska as attorney for another unless he is duly authorized thereto by a power of attorney in writing, duly acknowledged and recorded in any recorder's office in the judicial division where the location is made. Any person so authorized may locate placer-mining claims for not more than two individuals or one association under such power of attorney, but no such agent or attorney shall be authorized or permitted to locate more than two placer-mining claims for any one principal or association during any calendar month, and no placer-mining claim shall hereafter be located in Alaska except under the limitations of this act.

"That no person shall hereafter locate, cause or procure to be located, for himself more than two placer-mining claims in any calendar month: Provided, that one or both of such locations may be included in an association claim.

"That no placer-mining claim hereafter located in Alaska shall be patented which shall contain a greater area than is fixed by law, nor which is longer than three times its greatest width.

"That any placer-mining claim attempted to be located in violation of this act shall be null and void, and the whole area thereof may be located by any qualified locator as if no such prior attempt had been made."

U. S. Comp. St. 1916, §§ 5055–5058.

The plaintiff's contention in this case is that the location of the defendant Johnson of placer claim No. 1 Above Discovery on Bonanza Creek, made by James as attorney in fact on July 8, 1913, is null and void, for the reason that the power of attorney from Johnson to James was not recorded on or before July 8, 1913.

The determination of this question involves the consideration and construction of said act of August 1, 1913.

The purpose and intent of this act was unquestionably to correct the abuse which had become so prevalent throughout Alaska of staking and locating placer claims without number by those who preferred to use the hatchet and pencil rather than the pick and shovel. From the earliest days of the discovery of gold in California, the customs of miners, which grew up out of necessity, and the subsequent federal legislation of 1866 and 1872, since construed and settled, as they have been, by federal and state courts, have fairly answered the needs of the prospectors and miners in the public mineral land states. In Alaska, however, the extremely liberal policy of the government has been grossly abused by the speculative so-called prospector, who by staking large areas of ground has sought to exact tribute from the more willing and industrious workers, who happened to be late in point of time. The act above referred to is intended to correct this evil and should be given every effect to obtain that desirable end. No similar legislation by Congress was ever before enacted. The language of this act is so clear and plain that no dispute seems likely to arise thereunder, except this very important question: Must a power of attorney be recorded before the time the first step is taken in the location of a placer claim by the attorney in fact?

Prior to this act of August 1, 1912, three acts were necessary to constitute a valid location of a placer mining claim: First, discovery; second, marking of the boundaries of the claim upon the ground; and, third, recording of the location certificate. It has been held by the Supreme Court of the United States, and many times by the Alaska courts, and may be regarded as the settled law, that it is immaterial in what order these acts are performed, provided they are all performed before the accruing of any intervening or adverse rights. In the case of Creede & C. C. M. & M. Co. v. Uinta T. M. & T. Co., 196 U. S. 337, on page 348, 25 Sup. Ct. 266, on page 271 (49 L. Ed. 501), Mr. Justice Brewer (citing Brewster v. Shoemaker, 28 Colo. 176, 63 Pac. 309, 53 L. R. A. 793, 89 Am. St. Rep. 188, and other authorities) says:

" 'The order of time in which these several acts are performed is not of the essence of the requirements, and it is immaterial that the discovery was made subsequent to the completion of the acts of location, provided, only all the necessary acts are done before intervening rights of third parties accrue. All these other steps having been taken before a valid discovery, and a valid discovery then following, it would be a useless and idle ceremony, which the law does not require, for the locators again to locate their claim and refile their location certificate, or file a new one.'

"And that has been the general doctrine. In 1 Lindley, Mines (2d Ed.) § 330, the author says:

" 'The order in which the several acts required by law are to be performed is nonessential, in the absence of intervening rights. The marking of the boundaries may precede the discovery, or the discovery may precede the marking; and if both are completed before the rights of others intervene, the earlier act will inure to the benefit of the locator. But if the boundaries are marked before discovery, the location will date from the time discovery is made.'

"In 1 Snyder, Mines, § 354, it is said:  .

" 'While the general rule is, as stated elsewhere in the foregoing sections, that a location must rest upon a valid discovery, yet a location otherwise good, with a discovery made after location, and before the intervention of adverse claims or the creation of adverse rights, will validate the location from the date of discovery, and generally from the first act towards claim and appropriation—this by relation.'

"In Morrison, Mining Rights (11th Ed.) p. 32:

" 'If a location is made before discovery, but is followed by a discovery in the discovery shaft, before any adverse rights intervene, such subsequent discovery cures the original defect and the claim is valid.' "

This same question has been repeatedly decided by Alaska courts. See Heman v. Griffith, 1 Alaska, 264; Redden v. Harlan, 2 Alaska, 402, where the court says:

"The marking of the boundaries may precede the discovery and re-
cording, or the recording may be first; and if all three are performed,
though not within the time fixed by law or the rules and regulations,
before other rights intervene or attach to the land, it is sufficient, and
the claim will be valid.".

In addition to the said three essential acts necessary to make
a valid mining location, there is now added by this act of
August 1, 1912, a fourth, to wit, that a person locating a
placer claim in Alaska as attorney for another shall be duly
authorized thereto by a power of attorney in writing duly
acknowledged and recorded in any recorder's office in the
judicial division where the location is made.   Counsel for
plaintiff contend that this is not an act of location, but is a
qualification of the one making a location as attorney in fact
for another, and the power of attorney must be recorded before
the first step is taken in attempting to make such location of a
placer claim.   In the same sense the recording of a certificate
of location is not an act of location, but an evidence only that a
location has been made.   The execution and recording of the
power of attorney is an evidence only that the attorney in fact
was duly authorized thereto, and the act does not in express
terms require that such power of attorney must be recorded
before any initial step is taken to make a location of a placer
mining claim.   In a broad sense every act and thing necessary
to be done before the location is perfected may properly be
termed one of the acts of location.

The Legislature of Alaska seems to have recognized that
said act of August 1, 1912, did not require a power of attor-
ney to be so recorded, and by an act passed April 30, 1913,
which became operative July 29, 1913, provided:

"That no person shall hereafter locate any mining claim in the
territory of Alaska as attorney for another unless he is duly au-
thorized thereto by a power of attorney in writing, which shall be
witnessed by two witnesses but need not be acknowledged, and record-
ed in the office of the recorder in whose precinct such location is
made, previous to the date of the initiation of such location." Laws
1913, c. 74.

In the case of Sturtevant v. Vogel, 167 Fed. at page 452,
93 C. C. A. at page 88, the Circuit Court of Appeals for the
Ninth Circuit held that in Alaska a notice of location of a
mining claim is not required to be recorded, but the law mere-
ly permits the recording of such instrument and the court says,
citing the case of Ford v. Campbell, 29 Nev. 578, 92 Pac. 206:

"The intention that failure to comply with the statute should work a forfeiture of mining rights 'ought not to be imputed to the Legislature, except upon the very clearest language, not susceptible to any other reasonable construction.' "

It is a sound principle of equity and good conscience that forfeitures are odious in the law and the courts will not resolve a doubt, either of law or fact, in favor of a forfeiture of property rights. Butler v. Good Enough Min. Co., 1 Alaska, 246; Debney v. Iles, 3 Alaska, 438.

James, the attorney in fact for defendant Johnson, using money and supplies of Johnson, had gone into a remote and inaccessible portion of the interior of Alaska, enduring the hardships of an Arctic winter, and the following spring or summer had through his enterprise and industry made a valuable discovery, resulting in what later became known as the Shushana strike. In the name of and for the benefit of the person whose financial support had enabled him to enter upon this arduous undertaking, he located placer claim No. 1 Above Discovery on Bonanza Creek. He is provided at this time with a power of attorney, duly executed and acknowledged by Johnson, dated June 7, 1909.

Without commenting on the numerous details evidencing the good faith of James in attempting to comply with the law, it appears that he filed for record this power of attorney on the same day that he filed his notice of location, to wit, on August 7, 1913, with the United States commissioner and ex officio recorder, Morgan, who had only come into the said region and established an office about July 20, 1913. It would have been impossible for him to have recorded said power of attorney with said recorder before July 8th, the date when he initiated said location of Bonanza No. 1 Above Discovery, for the reason that no recording office then existed there. The nearest recording district in the Third judicial division was distant about 200 miles, to wit, at Copper Center or Chitina, which said two recording precincts were over and beyond an impassable range of mountains, far to the south and west, with glaciers and swift and dangerous rivers intervening; and yet the plaintiff insists that the defendant should, prior to July 8, 1913, have recorded this power of attorney in some recording district, somewhere in the Third judicial division of Alaska, which extends from the international boundary line between Alaska and British Columbia to the Aleutian Islands, reaching

past the 180th meridian into the Eastern Hemisphere. Of what possible use to the plaintiff could such a literal compliance with what he claims to be the requirement of this act have been, that said power of attorney be recorded hundreds of miles away, far beyond the ken or knowledge of plaintiff? The plaintiff did not come into the Shushana country until August. When he went upon the ground, he saw the notice and stakes and markings of the defendant on the ground. Some two weeks before he attempted to make his location, the last act of location on the part of the defendant had been performed, to wit, the recording of the notice of location and the recording of the power of attorney, and yet the plaintiff seeks to appropriate the fruits of the toil and enterprise of the defendant, and deprive him of his just reward, because said power of attorney was not sooner recorded. It seems a most unconscionable thing to do, and to award him this ground would be a travesty on justice, and should only be done in case the said act of August 1, 1912, is susceptible of no other reasonable construction than that the power of attorney therein provided for must be recorded (not in the recording precinct where the claim is situate, but anywhere within a judicial division extending over hundreds of miles, in most instances with no practicable means of communication between the 15 or more recording precincts therein), before any step whatever is taken by the attorney in fact to initiate the location of a placer mining claim. It is well known that prospectors are migratory and easily stampeded, and a prospector might have a power of attorney duly recorded at Nushagak or Susitna, and starting on a long trail to some new strike, consuming weeks of laborious and dangerous travel, and be qualified on reaching the new strike to locate a claim as attorney in fact, because he had his power of attorney recorded in a place utterly beyond the reach or knowledge of one seeking to take his claim away from him. Here the power of attorney was recorded right where both plaintiff and James were, and where the mining claim was situate, and two weeks before the plaintiff made any attempt to locate the ground over defendant's location.

The primary purpose of this act was to limit, not only the number of claims that could be located by an attorney in fact to two claims in each calendar month, but as well to limit the number of claims that any person could locate in his own name and right.

It would seem a reasonable construction of this act would be to require that an agent or attorney be authorized by a power of attorney executed and acknowledged before the first step is taken in making a location; but it is not necessary to decide that question in this case, for concededly the power of attorney from Johnson to James was so executed and acknowledged in June, 1909.

But the act does not in express terms require that the power of attorney be recorded before the first step is taken in making the location, nor, unless the same is so done, the location shall be null and void, and as said in Sturtevant v. Vogel, supra:

"The intention that failure to comply with the statute should work a forfeiture of mining rights ought not to be imputed to the Legislature, except upon the very clearest language, not susceptible to any other reasonable construction."

In the leading case of Jupiter Mining Co. v. Bodie Company (C. C.) 11 Fed. 666, 4 Morrison, Mng. Rep. 428, the court says:

"As a general principle of law, forfeitures are not favored. The object of recording mining claims is to give notice to others desiring to locate claims in the vicinity. The congressional law does not require a record, but prescribes what a record shall contain when it is required by the local rules.

"If there were no local rules in Bodie mining district attaching the penalty of forfeiture to the failure to record in that district, and recording was not made by custom an act of location, then the fact that the Lucky Jack claim was not recorded in the records of Bodie mining district will not invalidate the location, as to any party having actual notice of that location, and in that case the jury are instructed that if the Lucky Jack location was regular in all other respects, and the laws requiring work were complied with, the fact that the claim was not recorded in the Bodie mining district did not invalidate the location, or make it lawful for plaintiff's grantors, if they had actual notice of the previous location, to enter and locate the ground covered by the Lucky Jack location."

It is conceded that plaintiff had actual notice of the marking on the ground of said No. 1 Above Discovery on Bonanza, and the location certificate and also the power of attorney were duly recorded in that particular precinct two weeks before plaintiff attempted to make his location, not, as the courts have said, "as a discoverer, but as an appropriator"—an appropriator of other men's labor and toil.

In view of the principles and authorities above cited, I am of the opinion that a fair and reasonable construction of this

act is that a forfeiture of a placer mining claim is not worked by the failure to record the power of attorney before the first step is taken in making the location of such claim, and especially is this true in a case where the attorney has been duly authorized thereto by a power of attorney executed and acknowledged before such initial step is taken.

I again repeat that the evident purpose and intent of this act was to limit the number of claims that might be located, and not to provide for a forfeiture for failure to record the notice of location (for no such requirement is provided by the act); and, the only purpose of any recordation being to give notice, I do not believe it to be the intent of the act to work a forfeiture for failure to record the power of attorney, where it is recorded prior to the attaching of the rights of others.

On account of the views herein expressed as to the construction and effect to be given to said act of August 1, 1912, it will not be necessary to inquire into what was the legal effect, if any, of the recording of the power of attorney executed by Johnson to James on May 28, 1913, and on June 23, 1913, recorded in the Forty-Mile precinct in the Fourth judicial division of Alaska.

Ignorance of the law is no excuse, but this recording at Forty-Mile, together with the other facts set out in the agreed statement, under the peculiar conditions existing in the remote and inaccessible interior regions of Alaska, all point to the good faith of defendant and an honest effort to comply with the law.

As to the rights of the interveners in the two lode locations claimed by them, there seems to be no question but what, upon the agreed statement of facts, they were the prior locators thereof, made valid lode locations of the same, and are entitled to the 500 feet of the lower or southerly end of said Bonanza No. 1 Above placer claim.

I am compelled, therefore, to hold that plaintiff take nothing by this action and his complaint be dismissed; that the interveners are entitled to the possession of the said two lode claims designated as the Bonanza and Eldorado quartz mining claims, including the lower or southerly 500 feet of the said placer claim No. 1 Above Discovery on Bonanza Creek; that the defendant is entitled to the remainder of said placer claim.

Findings and decree may be entered accordingly.