WOODMAN v. ERIKSON.

(Third Division. Cordova. April 7, 1914.)

No. 74, Cordova

MINES AND MINERALS ☞14(2), 20(3)—LOCATION—POWER OF ATTORNEY.

On May 27, 1913, the defendant made and executed to one Wales a formal power of attorney, authorizing her to locate placer mines for him in Alaska. The power of attorney was recorded at Steel creek, outside of the division wherein the mines were located, on June 23, 1913. On June 30th the attorney in fact located the placer mines in question for defendant, posted notice on the claim, marked the boundaries, and made discovery. The location was in a distant, unexplored, and mountainous region, where there was no recording office. One was established there on July 20, 1913. The plaintiff located the same property on August 1, 1913. The defendant's power of attorney was recorded in that precinct on August 17, and his location notice on August 30, 1913. *Held,* the defendant made a valuable discovery of gold, by an attorney in fact duly authorized thereunto; the claim was properly staked and marked on the ground, so that the boundaries could be readily traced; the power of attorney was recorded in the proper recording office prior to the recording of the location notice or certificate, and within 90 days from the date of the discovery; the plaintiff was not misled or prejudiced by the failure to record the power of attorney sooner.

Plaintiff brings an action in ejectment to recover possession of a mining claim which he claims to have located on the 1st day of August, 1913. The defendant by his affirmative answer claims to have located the same ground on the 30th day of June, 1913, by virtue of a valid discovery of placer gold on that day made by Matilda Wales as the agent and attorney in fact for defendant, and on said 30th day of June the said Wales, attorney in fact, posted a notice of location of said placer claim designated as No. 1 on Chicken Creek, a tributary of Glacier creek, in the Shushana district of the White River recording precinct.

Defendant further alleges that the boundaries of said placer claim were immediately marked by proper stakes and monuments, so that the same could be readily traced; that the said Wales was duly authorized to make said location for defendant by a power of attorney, in writing, duly acknowl-

edged by defendant on May 27, 1913; that defendant's location certificate was recorded with the recorder of said White River precinct on August 30, 1913, and said power of attorney was recorded with said recorder on August 17, 1913.

O. A. Tucker, of Juneau, and Frank H. Foster, of McCarthy, for plaintiff.

Maurice D. Leehey and John J. Finnegan, both of Seward, for defendant.

BROWN, District Judge. All the material facts in the said affirmative answer being admitted by the demurrer, it seems that defendant made a valid location of said mining claim on June 30, 1913, making a valuable discovery of placer gold, and performed all the other necessary acts of location, except that the said power of attorney was not recorded until August 17th, some 17 days after the plaintiff alleges that he entered upon said ground and located the same.

In the case of Likaits v. Johnson, 5 Alaska, 63, and the case of Sutherland v. Purdy, recently tried in this court, it was held that a power of attorney was not required under the act of Congress of August 1, 1912 (37 Stat. 243, c. 269, § 2 [U. S. Comp. St. 1916, § 5055]), to be recorded before the first step was taken to initiate a valid location of a placer mining claim. In the opinion expressed in the Likaits v. Johnson and Sutherland v. Purdy Cases it was not deemed necessary to go beyond the fact in those cases, which fact was that the power of attorney had been recorded prior to the attempted location or relocation by the plaintiff. Therefore, following the well-settled rule of law governing the order in which acts of location are required to be made, it was immaterial in what order they were made, provided they were all done prior to the rights of another intervening.

As held in said two cases, the purpose and intent of said act of August 1, 1912, in requiring the power of attorney to be recorded, was not in order to give notice to a subsequent locator, as is the purpose of the recordation of ordinary powers of attorney to give notice to subsequent purchasers or incumbrancers. Here the stakes or markings on the ground are notice to any honest inquirer sufficient to put him in the

way of ascertaining the facts relative to the location and appropriation of that particular ground.

While it is not necessary to record a location certificate in Alaska, nevertheless it is the almost universal practice and custom to do so, and this is done by permission of the statute, section 175, Compiled Laws of Alaska, which authorizes the filing for record of location notices of mining claims within 90 days from the date of the discovery of the claim described in the notice. Defendant, having made a valid discovery, located by proper markings and stakings on the ground the limits of his claim on the 30th day of June, 1913. He therefore had until about September 28th within which to take advantage of this permissive statute. Why should he be required to file the power of attorney sooner? The act of August 1, 1912, does not say when the power of attorney shall be recorded. Mrs. Wales had the power of attorney in writing, duly acknowledged, in her possession at the time of making the location on June 30th.

It is not necessary to inquire or to know whether or not this woman, one of those fearless and intrepid characters of the North, penetrating into a remote and inaccessible region in the far interior of Alaska, was enabled to make this difficult and dangerous expedition by means of what is known as a "grubstake," often resorted to by those who act under powers of attorney. The fact is that she was duly authorized to make the location of this placer claim by a power of attorney, in writing, duly acknowledged and delivered to her, before she made the discovery of valuable placer gold and staked the ground. If the plaintiff's contention is right, then, Mrs. Wales making the location of June 30th (three weeks before there was any recorder at said White River precinct), the plaintiff, desiring to appropriate the fruits of her discovery, could have located his claim over her discovery and staking of the ground, on the 1st day of July, and on this hearing contended that his right intervened before she had filed or recorded the power of attorney, although there was no recorder in said precinct until about July 20, 1913, when that office was first established.

The plaintiff has submitted a long line of authorities which hold generally, what is unquestionably the law, "that the right to possession comes only from a valid location," and "a loca-

tion is not made from taking possession alone, but by working on the ground, recording, and doing whatever else is required for that purpose by the acts of Congress and the local rules and regulations"; but they do not serve to throw much light on this question, viz. the meaning and intent of the act of August 1, 1912, relative to recording the power of attorney.

As said in the case of Sutherland v. Purdy:

"Had the author of this act of August 1, 1912, the Honorable James Wickersham, now Delegate in Congress from Alaska, and long one of the District Judges of Alaska, thoroughly familiar with the needs of this territory, intended that the recording of the power of attorney was for the sole or primary purpose of giving notice to a subsequent locator, he would not have been satisfied with the provision that the power of attorney might be recorded anywhere in the judicial division wherein the location was made; for in this, the Third judicial division, such recording might have been done at a point over 1,000 miles distant from the place where a placer location was made thereunder, and of what avail, as a matter of notice, would such recording be?"

No; the purpose and intent of this act was to limit the number of claims that could be located, either by an individual in his own right or by power of attorney, and the power of attorney is required to be in writing and duly acknowledged; but it is not expressly provided that the same must be recorded before the first or initial step is taken in making a location, and, in the absence of such provision, every consideration of justice, equity, and good conscience dictate that such an interpretation should not be read into it, in favor of the odious forfeiture of property rights.

The plaintiff contends that such a construction would open the door to fraud, meaning presumably that one not authorized by power of attorney in writing duly acknowledged might make an attempted location of a placer claim as agent or attorney, and then procure the power of attorney afterwards. It is not to be presumed that any one would commit such an offense or crime as to procure the fraudulent antedating of a power of attorney and acknowledgment by an officer authorized to take acknowledgments. As well might it be said that the recorder would criminally and fraudulently antedate the recording of the instrument.

It is not possible to find authorities directly in point, for

no legislation of this kind was ever before enacted relating to the location of mining claims. According to all authority and precedent, the failure to record a power of attorney could not be taken advantage of by one who has actual notice; and the only one who could be heard to complain of nonrecording would be an innocent purchaser or incumbrancer "without notice." By analogy a subsequent locator would have actual notice by the staking on the ground, and, as alleged in the affirmative answer in this case, the posting of the location on the ground.

"In the mining laws of all civilized countries the great consideration for granting mines to individuals is discovery. Rewards so bestowed, says Gamboa, besides being a proper return for the labor and anxiety of the discoverers, have the further effect of stimulating others to search for veins and mines, on which the general prosperity of the state depends." 2 Lindley, Mines, § 335.

Lindley also says, with reference to notices and the liberal construction applied thereto:

"Sec. 355. They preserve the simplicity of the primitive system and recognize the fact that miners are unacquainted with legal forms and usually are out of reach of legal assistance."

Again:

"As such notices are generally made by unlettered men, it would be productive of a great hardship if prospectors should be held to technical accuracy in their preparation. If they are sufficiently certain to put an honest inquirer in the way of ascertaining where the lode is, that is sufficient."

In 31 Cyc. p. 1231, it is said:

"As the purpose of requiring acknowledgment and record is thereby to give notice to third persons, failure to record the power of attorney, even when recording is required by law, will not invalidate the agent's acts, unless the statute makes recording a prerequisite to authority to act, or provides that unrecorded instruments shall be absolutely void."

On same page of Cyc., note 33, it is said (as to sufficiency of recording):

"In a case, Drake v. Brander, 8 Tex. 351, in which objection to a power of attorney, because it was not filed, was held to be sufficiently answered by filing it."

While in the cases of Likaits v. Johnson and Sutherland v. Purdy the facts did not require the determination of any-

thing beyond the question as to the effect of the recording of the power of attorney prior to the intervening of the rights or claims of third persons, I feel that the ends of justice and a reasonable construction of the purpose and intent of this act permit of the validity of the location made by defendant on June 30, 1913, by Mrs. Wales, attorney in fact, though the power of attorney was not filed for record until August 17th.

As to the effect of the recording of the power of attorney in the Forty-Mile precinct in the Fourth judicial division, on June 23, 1913, the defendant makes an ingenious argument that this is a compliance with the spirit of the act of August 1, 1912. The plaintiff's motion to strike this allegation in the affirmative defense was denied, on the ground that such allegation tended to explain the conditions and circumstances surrounding the entire transaction, and was some evidence of good faith on the part of defendant, which ought always to be admissible in evidence in a case where the forfeiture of property rights is sought to be enforced. In view of the opinion herein expressed, it will not be necessary to determine what legal effect, if any, this recording outside of the Third judicial division might have. The defendant made a valuable discovery of gold, by an attorney in fact duly authorized thereunto; the claim was properly staked and marked on the ground, so that the boundaries of the claim could be readily traced. The power of attorney was recorded in the proper recording office prior to the recording of the location notice or certificate, and within 90 days from the date of the discovery; the plaintiff was not misled or prejudiced by the failure to record the power of attorney sooner.

The demurrer will be overruled.